IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Trusteeship Created by American Home Mortgage Investment Trust 2005-2 relating to the issuance of Mortgage-Backed Notes pursuant to an Indenture dated as of October 1, 2007 | Case No. 14-cv-02494-AKH |

**MEMORANDUM OF LAW BY WELLS FARGO BANK, N.A., SOLELY IN ITS CAPACITY AS SECURITIES ADMINISTRATOR, IN OPPOSITION TO SEMPER CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS THE VERIFIED PETITION**

ALSTON & BIRD LLP

Michael E. Johnson
Carolyn R. O'Leary
90 Park Avenue
New York, New York 10016-1387
Tel. 212-210-9400

*Attorneys for Petitioner Wells Fargo Bank, N.A., solely in its capacity as Securities Administrator*

**A&B DRAFT**
**PRIVILEGED AND CONFIDENTIAL**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

FACTUAL BACKGROUND.................................................................................2

    I.   The Transaction and the Dispute as to Allocation of Realized Losses.....................2

    II.  Minnesota Trust Instruction Proceeding...................................................6

    III. Removal to Federal Court and Transfer to The Southern District of New York.......7

ARGUMENT .........................................................................................................7

    I.   The Motion to Dismiss Standard .............................................................7

    II.  This Action is Permitted Pursuant to the Minn. TIP Statute and Similar Statutes ....8

    III. Neither the Trust Indenture Act Nor the Indenture Forecloses the Relief
         Being Sought....................................................................................10

        A.  The Trust Indenture Act...................................................................10

        B.  The Indenture ..............................................................................12

    IV. Semper's Arguments as to the Substantive Elements of a Claim for
         Reformation Are Irrelevant to Its Motion to Dismiss...............................................14

    V.  If the Court finds That This Action Must Be Dismissed, It Should Grant
         the Securities Administrator Leave to Replead ........................................................15

CONCLUSION......................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                    <u>Page(s)</u>

*40 West 67th St. v. Pullman*,
    296 A.D.2d 120, 742 N.Y.S.2d 264 (1st Dep't 2002) ...........................................................14

*AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*,
    897 F. Supp. 724 (S.D.N.Y. 1995) ....................................................................................15

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*,
    No. 04CIV10014PKL, 2005 WL 1950116 (S.D.N.Y. Aug. 12, 2005)..................................13

*Bank of New York v. First Millennium, Inc.*,
    607 F.3d 905 (2d Cir. 2010)......................................................................................5, 12

*Blackrock Fin. Mgmt. Inc. v. Segregated Account of AMBAC Assur. Corp.*,
    673 F.3d 169 (2d Cir. 2012)..........................................................................................9

*City of New York v. State*,
    40 N.Y.2d 659, 389 N.Y.S.2d 332 (1976) .......................................................................14

*Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*,
    No. 99 CIV 10517 HB, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999)....................................11

*Fidelity Brokerage Servs., LLC v. Bank of China*,
    192 F. Supp. 2d 173 (S.D.N.Y. 2002)..............................................................................12

*In re A Petition for Instructions to Construe Basic Resolution 876 of the Port Authority
    of the City of St. Paul*,
    772 N.W.2d 488 (Minn. 2009)..........................................................................................8

*In re Indenture of Trust, dated October 1, 1985, between Minneapolis Community Dev.
    Agency & Nat'l City Bank of Minneapolis, as Trustee, Relating to the $10,000,000
    Commercial Dev. Revenue Bonds, Series 1985 (Crown Mill Project)*,
    No. A03-1856, 2004 WL 1662174 (Minn. Ct. App. July 27, 2004)....................................8, 9

*Katz v. ABP Corp.*,
    No. 12-CV-4173(ENV), 2013 WL 2444605 (E.D.N.Y. June 4, 2013) ....................................8

*Matter of Trusts by Hormel*,
    543 N.W.2d 668 (Minn. Ct. App. 1996).............................................................................9

*Metropolitan Life Ins. Co. v. Mitchell*,
    966 F. Supp. 2d 97 (E.D.N.Y. 2013) ...............................................................................14

*Phelps v. Kapnolas*,
    308 F.3d 180 (2d Cir. 2002)............................................................................................7

**Cases**                                                                                           **Page(s)**

*Phillips v. Girdich,*
    408 F.3d 124 (2d Cir. 2005)...................................................................................8

*Skinner v. Switzer,*
    131 S. Ct. 1289 (2011)......................................................................................8

*Upic & Co. v. Kinder–Care Learning Centers, Inc.,*
    793 F. Supp. 448 (S.D.N.Y. 1992) ...................................................................11

*Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.,*
    985 F.2d 677 (2d Cir. 1993)..............................................................................12

*Wynder v. McMahon,*
    360 F.3d 73 (2d Cir. 2004).................................................................................8

*YRC Worldwide Inc. v. Deutsche Bank Trust Co. Am.,*
    10-2106-JWL, 2010 WL 2680336 (D. Kan. July 1, 2010) .....................................11

**Statutes and Rules**

15 U.S.C. § 77aaa *et seq.* ....................................................................................10

15 U.S.C. § 316(b) ................................................................................10, 11, 12

28 U.S.C. § 1335...................................................................................10, 15

Fed. R. Civ. P. 12(b)(6)...............................................................................7

Fed. R. Civ. P. 22 .................................................................................9, 12, 15

N.Y. C.P.L.R. § 7701, *et seq.*...........................................................................9, 13

Cal. Prob. Code § 17200, *et seq.* ..........................................................................9

Ind. Code 30-4-3-18 ....................................................................................9

Minn. Stat. § 501B.16..............................................................................3, 6, 8, 10

Minn. Stat. § 501B.18.................................................................................6, 15

Minn. Stat. § 501B.19.................................................................................6, 15

Minn. Stat. § 501B.21 ................................................................................7, 15

Tex. Prop. Code 115.001 ...............................................................................9

Unif. Trust Code §§ 201-204 ............................................................................9

A&B DRAFT
**PRIVILEGED AND CONFIDENTIAL**

Petitioner Wells Fargo Bank, N.A. ("Wells Fargo"), solely in its capacity as Securities Administrator and not in its individual capacity (Wells Fargo in that capacity, the "Securities Administrator"), by and through its counsel, respectfully submits this Memorandum of Law in opposition to party-in-interest Semper Capital Management, L.P.'s ("Semper") motion to dismiss the Verified Petition (the "Petition").

## PRELIMINARY STATEMENT

This action pertains to a residential mortgage loan securitization transaction. Certain mortgage loans were deposited in the American Home Mortgage Investment Trust 2005-2, the proceeds of which are used to pay principal and interest amounts to investors in notes issued by the trust. Wells Fargo serves as Securities Administrator, and its responsibilities include making payment of principal of and interest on the Notes[1] to the noteholders, including interested parties Semper and Sceptre, LLC ("Sceptre"), pursuant to the terms of the securitization Indenture (as defined below).

The Securities Administrator, faced with an apparent conflict between the terms of the Indenture and the Prosupp (as defined below) concerning the sequence of the allocation of Realized Losses between two Classes of Notes, filed a Petition pursuant to Minnesota state law, requesting an instruction from the court as to the conflicting terms. The core relief sought in the Securities Administrator's Petition is an order either (a) reforming the Indenture to conform to the Realized Loss allocation sequence described in the Prosupp or (b) requiring the Securities Administrator to allocate Realized Losses pursuant to the literal terms of the Indenture. The Securities Administrator holds no Notes and has no pecuniary interest in the outcome of this matter; instead, it simply seeks a judicial order clarifying the respective rights of the two Classes

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Indenture.

of affected Notes so that it can perform its duties free from uncertainty and risk of liability.  It therefore takes no position as to the appropriate resolution of the case (*i.e.*, whether the Court should order (a) or (b), above).

Semper's motion improperly seeks to preclude judicial resolution of the issue presented by the Securities Administrator's Verified Petition.  The Securities Administrator has properly stated a cause of action under the relevant statutory scheme, and neither the Trust Indenture Act nor the Indenture bars this action.  Not only has it been authorized by the Minnesota state legislature, this action, brought by a stakeholder seeking resolution of a dispute presented by two interested parties, is entirely consistent with the laws of other states (including New York) and the U.S. Congress.  The Court should decline Semper's invitation to deny the Securities Administrator access to a judicial remedy protected under state and federal law.

## FACTUAL BACKGROUND

### I.      The Transaction and the Dispute as to Allocation of Realized Losses

The Securities Administrator serves in that capacity pursuant to an Indenture, dated as of June 22, 2005, by and among American Home Mortgage Investment 2005-2, as Issuer, the Securities Administrator, and Deutsche Bank National Trust Company, as Indenture Trustee, as amended by the First Supplemental Indenture, dated as of August 31, 2009, by and among the Issuer, the Securities Administrator and the Indenture Trustee (the "Indenture").[2]  Pursuant to the terms of the Indenture, the Issuer, a Delaware statutory trust, granted to the Indenture Trustee, as trustee for the benefit of the Holders of the Notes and the Insurer, all of the Issuer's right, title and interest in and to the Trust Estate (as more fully described in the Indenture).  Such grant was made in trust to secure the payment of principal of and interest on, and any other amounts owing

---

[2] A copy of the Indenture, without the First Supplemental Indenture, was attached as Exhibit 1 to the Verified Petition.

in respect of, the Notes.  *See* Verified Petition of Wells Fargo, as Interested Person, for Instructions in the Administration of a Trust Pursuant to Minn. Stat. § 501B.16, filed January 17, 2014 ("Verified Petition") ¶ 7.

The Issuer issued Mortgage-Backed Notes ("Notes") in the aggregate Initial Note Principal Balance amount of $5,778,151,000.  *See id.*  The Notes were issued in a number of classes, each having different terms, including different rates of interest and different priorities in right of payment of interest and principal and different priorities in the allocation of Realized Losses. *See id.* ¶ 8.  Pursuant to the terms of the Indenture, the Mortgage Loans underlying the Notes are organized into Group I, Group II-C, Group II-NC, Group III, Group IV, Group V, and Group VI Mortgage Loans.  *See id.* ¶ 9.  At issue in this proceeding are two of the Classes associated with the Group I Loans.  *See id.* ¶ 14.

The terms of the Notes and Indenture were described in the Prospectus Supplement dated June 20, 2005, to the Prospectus dated March 22, 2005 (the "Prosupp"), the offering document made available to prospective investors.[3]  *See id.* ¶ 10.

The Indenture defines a Realized Loss as, "(i) a Deficient Valuation, or (ii) as to any Liquidated Mortgage Loan, the unpaid principal balance thereof plus accrued and unpaid interest."[4]  *See id.* ¶ 11.  When a Realized Loss is applied to a Class of Notes, the Note Principal Balance is reduced, which ultimately reduces the payments received by Holders in respect of the Notes on a Payment Dates.[5]  *See* Verified Petition Ex. 1 at §§ 3.05, 3.38

The mechanics for allocation of Realized Losses among the Classes of Notes are provided by Section 3.38 of the Indenture, which states in relevant part that "[a]ny Realized

---

[3] The Prosupp was attached at Exhibit 2 to the Verified Petition.
[4] The Prosupp defines Realized Loss as "[a]ny loss on a mortgage loan attributable to the mortgagor's failure to make any payment of principal or interest as required under the mortgage note."
[5] Payment Date is defined in the Indenture as "[t]he 25th day of each month, or if such day is not a Business Day, then the next Business Day, commencing in July 2005."

Losses on the Group I Loans . . . will be allocated on any Payment Date . . . *to the Class I-A-2 Notes and Class I-A-3 Notes, in that order*, in reduction of the Note Principal Balance thereof ." *See* Verified Petition Ex. 1 at § 3.38 (emphasis added).  In other words, Section 3.38 provides that Realized Losses are to be allocated to the Class I-A-2 Notes before allocation to the Class I-A-3 Notes.

The Prosupp, however, reverses the order for allocation of Realized Losses: "Any Realized Losses on the mortgage loans in Loan Group I . . . will be allocated or covered on any payment date . . . *to the Class I-A-3 Notes and Class I-A-2 Notes, in that order*, in reduction of the Note Principal Balance therefor, until reduced to zero . . . ."  *See* Verified Petition Ex. 2 at S79-80 (emphasis added.).  Thus, the terms of the Indenture and the Prosupp are inconsistent as to the sequence for allocation of Realized Losses for Group I Loans between Class I-A-3 Notes and Class I-A-2 Notes.  *See* Verified Petition ¶ 14.

In November 2010, a Class I-A-2 Holder wrote to the Securities Administrator regarding the discrepancy between the Indenture and the Prosupp, stating that the Realized Loss allocation sequence in the Prosupp was correct, that the sequence contained in the Indenture was a drafting error, and that allocation in accordance with the Indenture would have the effect of demoting the Class I-A-2 Notes from Senior Mezzanine to Junior Mezzanine.  *See id.* ¶ 15.  In response, the Securities Administrator acknowledged the conflict between the documents and stated that it would allocate Realized Losses in accordance with the Indenture, absent an amendment to the Indenture.  *See id.* ¶¶ 16-17.  Subsequently, several other Class I-A-2 and Class I-A-3 Holders contacted the Securities Administrator regarding the discrepancy.  *See id.* ¶ 18.

On May 10, 2013, the Securities Administrator sent Class I-A-2 and Class I-A-3 Holders an Informational Notice and Request for Consideration of Proposed Second Supplemental

Indenture (the "Consent Request").[6]   *See id.* ¶ 19.   In the Consent Request, the Securities Administrator notified Holders of the conflict between Section 3.38 of the Indenture and the Prosupp.  *See id.* ¶ 20. The Securities Administrator further notified Holders that an amendment to the Indenture to conform Section 3.38 to the sequence in the Prosupp would require the consent of 100% of Class I-A-2 and Class I-A-3 Holders.  *See id.*  The Securities Administrator requested that Holders provide consent on or before July 10, 2013.  *See id.* In the Consent Request, the Securities Administrator also notified Holders that it was reserving the right to take further action, including legal action, to resolve the conflict between the Indenture and the Prosupp.[7] *See id.* ¶ 21.

The Securities Administrator did not receive consent from 100% of the Class I-A-2 and Class I-A-3 Holders and, therefore, the Indenture was not amended.  *See id.* ¶ 22.  The Securities Administrator notified Holders that it had not received the consent required for an amendment by an Informational Notice Regarding Proposed Second Supplemental Indenture, dated July 11, 2013 (the "Informational Notice").[8]  *See id.* In the Informational Notice, the Securities Administrator again informed Holders that it was reserving the right to take further action, including legal action, to resolve the conflict between the Indenture and the Prosupp.  *See id.* ¶ 23.

The Securities Administrator has not yet had to allocate Realized Losses to the Class I-A-2 or Class I-A-3 Notes because other, more subordinate Classes of Notes have been allocated the

---

[6] The Consent Request is Exhibit 3 to the Verified Petition.

[7] There is no basis for Semper's suggestion that it could pursue affirmative claims for relief against the Securities Administrator.  As a factual matter, Wells Fargo consistently informed Holders of Notes that it retained the right to pursue judicial remedies, precisely what it did when it filed its Verified Petition.  As a legal matter, a claim by a Holder for damages it claims to have suffered as a result of the Securities Administrator's resort to legal remedies is squarely foreclosed by applicable law.  *See, e.g., Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (affirming district court's dismissal of counterclaims against securitization trustee because the trustee was faced with multiple adverse claims on the trust corpus and, therefore, rightly commenced an interpleader action).

[8] The Informational Notice is Exhibit 4 to the Verified Petition.

Realized Losses incurred to date.  *See id.* ¶ 24.  However, it anticipates that very shortly, allocation of Realized Losses to one or the other Class will be required.  *See id.*

## II.    Minnesota Trust Instruction Proceeding

Recognizing that it would soon have to allocate Realized Losses to the Notes in the Classes affected by the conflict, the Securities Administrator filed the Verified Petition in the Minnesota District Court, Fourth Judicial District, seeking an order from that court pursuant to Minn. Stat. § 501B.16 *et s eq.* (the "Minn. TIP Statute") on January 17, 2014.  The Minn. TIP Statute provides a means for a trustee or interested party in a trust to petition the district court for an order, *inter alia*, "to construe, interpret, or reform the terms of a trust, or authorize a deviation from the terms of a trust."  Minn. Stat. § 501B.16(4).  It also permits a trustee or interested party to petition the court "to instruct the trustee, beneficiaries, and any other interested parties in any matter relating to the administration of the trust and the discharge of the trustee's duties." Minn. Stat. § 501B.16(23).  Furthermore, a trustee or interested party may commence a proceeding under the Minn. TIP Statute even if trust beneficiaries have not raised conflicting positions on the issue.[9]

The Minn. TIP Statute prescribes requirements for the petitioner to provide notice to all beneficiaries of the trust.  *See* Minn. Stat. § 501B.18.  The Securities Administrator has fully complied with the notice requirements of the Minn. TIP Statute.  *See* Declaration of Michael E. Johnson, dated April 25, 2014 (the "Johnson Decl."), Exhibits A-D.  It also requires that the court represent all parties-in-interest who are unascertained or not in being, and provides that a court's ruling will bind the trust estate and all beneficiaries thereto. *See* Minn. Stat. §§ 501B.19,

---

[9] The Securities Administrator commenced its Minn. TIP Statute proceeding before Realized Losses reached either of the two affected Classes, so as to afford the Minnesota court an opportunity to rule on the dispute before allocation to one or the other Class would be required.  With the removal of this action to federal district court and the subsequent transfer of the action to this court, it is unlikely a ruling on the merits will be issued before Realized Losses have to be allocated to one of the affected Classes.

501B.21.

### III.    Removal to Federal Court and Transfer to The Southern District of New York

On February 18, 2014, Sceptre, LLC ("Sceptre"), a Holder of Class I-A-2 Notes, appeared as a party-in-interest, and removed the Minnesota state court action to the United States District Court for the District of Minnesota.  Subsequently, Semper, a Holder of Class I-A-3 Notes, appeared in the Minnesota federal action.  On April 2, 2014, Semper filed this motion to dismiss.  On or about April 3, 2014, the parties executed and filed a stipulation to transfer the action to the United States District Court for the Southern District of New York, and the action was transferred.

### ARGUMENT

In its Verified Petition, the Securities Administrator seeks judicial resolution of the conflict between the Indenture and the Prosupp concerning allocation of Realized Losses as between the I-A-2 and I-A-3 Notes.  Under the guise of a motion to dismiss, Semper effectively seeks resolution of that conflict in its favor.  The Securities Administrator takes no position as to how the conflict should be resolved, but it opposes Semper's motion to the extent it is premised on the argument that this action was not properly commenced.

### I.    The Motion to Dismiss Standard

It is not the role of the Court on a motion to dismiss to address the merits of the claims asserted, but instead simply to determine whether the claimant has adequately pled a claim for relief that is plausible on its face.  *See Phelps v. Kapnolas*, 308 F.3d 180, 184-185 (2d Cir. 2002) (dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief") (internal quotations omitted).  A court should not dismiss an action on merely technical grounds,

and will allow a claim to proceed on any legal basis so long as sufficient facts are pled.  *See Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) (reversing dismissal of complaint because complaint was sufficient to put defendants on fair notice); *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) ("*All* complaints must be read liberally; dismissal on the pleadings *never* is warranted unless the plaintiff's allegations are doomed to fail under any available legal theory.") (emphasis in original). This is the case even if a specific legal theory is not specifically pled.  *See Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory."); *see also Katz v. ABP Corp.*, No. 12-CV-4173(ENV), 2013 WL 2444605, at *2 (E.D.N.Y. June 4, 2013) (citing *Skinner*).

## II.     This Action is Permitted Pursuant to the Minn. TIP Statute and Similar Statutes

The Securities Administrator commenced an action in Minnesota District Court, Fourth Judicial District pursuant to the Minn. TIP Statute.  The Minn. TIP Statute broadly permits a trustee or interested party to petition the court for an order, *inter alia*, to "construe, interpret or reform the terms of a trust, or authorize a deviation from the terms of a trust," or to "instruct the trustee, beneficiaries, and any other interested parties in any matter relating to the administration of the trust."  Minn. Stat. §§ 501B.16(4), (23); *see also In re A Petition for Instructions to Construe Basic Resolution 876 of the Port Authority of the City of St. Paul*, 772 N.W.2d 488, 491-92 (Minn. 2009) (discussing the history and intent of the Minn. TIP Statute); *In re Indenture of Trust, dated October 1, 1985, between Minneapolis Community Dev. Agency & Nat'l City Bank of Minneapolis, as Trustee, Relating to the $10,000,000 Commercial Dev. Revenue Bonds, Series 1985 (Crown Mill Project)*, No. A03-1856, 2004 WL 1662174, at *4 (Minn. Ct. App. July 27, 2004) (same).

The Minn. TIP Statute is not unique; similar trust instruction proceedings are available

under the laws of other states. For example, New York C.P.L.R. Article 77, "authorizes a special proceeding to determine a matter relating to any express trust. . . [and such proceedings] are used by trustees to obtain instruction as to whether a future course of conduct is proper, and by trustees (and beneficiaries) to obtain interpretations of the meaning of trust documents." *Blackrock Fin. Mgmt. Inc. v. Segregated Account of AMBAC Assur. Corp*., 673 F.3d 169, 174 (2d Cir. 2012) (internal quotations and citations omitted). Similar statutes exist in other states because legislatures have recognized a benefit in providing a forum and procedure for trustees and other interested parties in a trust to seek the court's instruction as to the administration of the trust and interpretation of trust documents. *See, e.g.,* Cal. Prob. Code § 17200, *et seq.*; Ind. Code 30-4-3-18; Tex. Prop. Code 115.001; Unif. Trust Code §§ 201-204.

The Securities Administrator has adequately alleged a valid claim under the Minn. TIP Statute. First, as Securities Administrator, it is an "interested party." *See, e.g., In re Indenture of Trust, dated October 1, 1985*, 2004 WL 1662174 (action initiated by issuer); *Matter of Trusts by Hormel*, 543 N.W.2d 668 (Minn. Ct. App. 1996) (action initiated by trust beneficiaries). Second, it seeks an order construing, or authorizing deviation from, the terms of a trust. More specifically, the Securities Administrator seeks an order authorizing it to apply the literal terms of Section 3.38 of the Indenture or authorizing it to deviate from such terms by reforming the Indenture's terms. *See* Verified Petition ¶ 25. Having pled the elements of a cause of action under the Minn. TIP Statute, the Securities Administrator's action should not be dismissed.

Although not pled as an interpleader action, the Verified Petition also sufficiently pleads the elements of an interpleader pursuant to Federal Rule of Civil Procedure 22(a), since the Securities Administrator seeks a ruling as to the correct sequence of allocation of Realized Losses to the Class I-A-2 and Class I-A-3 Notes, due to the inconsistency between the Indenture

and Prosupp, the adverse claims by the Holders and the risk of double or multiple liability.  *See* Verified Petition ¶ 3-5.[10]  There is thus no basis for dismissal of the Securities Administrator's Petition.

### III.   Neither the Trust Indenture Act Nor the Indenture Forecloses the Relief Being Sought

#### A.  The Trust Indenture Act

Semper's reliance on the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa *et seq.*, and specifically, Section 316(b) thereof, is misplaced, because this Court has the authority to grant either of the alternate forms of relief requested by the Securities Administrator, notwithstanding any provisions of the TIA.  After the proposed amendment to conform Section 3.38 of the Indenture to the terms of the Prosupp failed to obtain unanimous consent, the Securities Administrator notified the affected Holders that no amendment would occur.  The Securities Administrator does not now seek an amendment of the Indenture, but instead asks the Court to either reform the Indenture or order that the Realized Losses be allocated pursuant to the literal terms of Section 3.38 of the Indenture.

On its face, Section 316(b) of the TIA does not preclude the relief being sought.  The statute protects the "right of any holder of any indenture security to receive payment of the principal [] and interest."  By commencing an action under the Minn. TIP Statute, the Securities Administrator merely seeks an order "constru[ing], interpret[ing] or reform[ing]" the terms of the Indenture.  *See* Minn. Stat. § 501B.16(4).  In other words, the Securities Administrator seeks judicial clarification as to the relative rights of the Holders of Class I-A-2 Notes and Class I-A-3 Notes, not an impairment of those rights in contravention of Section 316(b).

The relief sought in this action simply does not implicate the considerations that resulted

---

[10] The Securities Administrator believes that the elements of statutory interpleader have also been pled if Semper and Sceptre are diverse.  *See* 28 U.S.C. § 1335(a).

in the statute's enactment.  Congress passed the statute to address the Securities Exchange Commission's concern that majority holders were interfering with minority holders' rights to payments.  *See Upic & Co. v. Kinder–Care Learning Centers, Inc.*, 793 F. Supp. 448, 452-53 (S.D.N.Y. 1992).  To address its concern, the SEC sought legislation that would place recapitalizations "under regulatory and *judicial* control."  *Id*. at 453 (emphasis added).  The SEC's (and Congress's) concerns about abuse of control by majority holders are simply not implicated here, because the Securities Administrator, a party with no pecuniary interest in the outcome of the dispute, has instituted the action.  Moreover, to the extent the SEC was interested in "judicial control" over conduct that could affect minority investor rights, the Securities Administrator has furthered that interest by commencing an action in Minnesota District Court. This action is thus distinguishable from the cases cited by Semper wherein holders or issuers were seeking to circumvent or amend the restrictions of transaction documents without judicial guidance or the unanimous consent of affected holders.  *See Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*, No. 99 CIV 10517 HB, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999) (cited at Semper Br. 7) (preliminarily enjoining defendant from closing on expiring tender offer that would have required amendments to transaction documents, including deletion of guarantees by underlying subsidiaries, that would have violated TIA § 316(b)); *YRC Worldwide Inc. v. Deutsche Bank Trust Co. Am.*, 10-2106-JWL, 2010 WL 2680336, at **4-6 (D. Kan. July 1, 2010) (cited at Semper Br. 6) (holding that deletion of indenture sections that included repayment rights as a part of a restructuring proposal would violate TIA § 316(b) because holders did not unanimously consent).

Finally, Semper's argument that the TIA forecloses the Securities Administrator from seeking judicial guidance in the face of irreconcilable demands by competing investors cannot be

reconciled with the well-settled right of a stakeholder to interplead a disputed asset or fund when the disposition of that stake is disputed by interested parties.  Congress and the courts have recognized that a neutral stakeholder should not be required to face potential liability from interested parties when a dispute arises as to the proper disposition of the stake.  *See, e.g., Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (holding that interpleader is available to a person who is or may be exposed to multiple liability as the result of adverse claims); *Washington Elec. Coop., Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993) (rule interpleader "is a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims"); *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. 2002) ("Whether statutory or under Rule 22, interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit.").  If the relief Semper seeks is granted, it would not only abrogate the Securities Administrator's rights in respect of this transaction but could also impair the ability of other stakeholders to avail themselves of interpleader and similar remedies.

### B.  The Indenture

Semper's argument that the Indenture forecloses this action is flawed for essentially the same reasons that doom its TIA argument.  As with Section 316(b) of the TIA, Section 5.07 of the Indenture protects the rights of Holders to receive principal and interest, but it does not prohibit an action, such as this, seeking judicial guidance as to the scope and operation of such rights.  Section 9.02(vi) is essentially irrelevant here, since (as Semper concedes) that provision pertains to amendments of the Indenture, which is not a form of relief the Securities Administrator seeks. In fact, Section 10.12 of the Indenture expressly preserved the Securities

12

Administrator's right to pursue all "remedies" available under New York law, which remedies include contract reformation and a dispute resolution mechanism substantially similar to the Minn. TIP Statute. *See* N.Y. C.P.L.R. § 7701, *et seq.*; *see also Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Am.*, No. 04CIV10014PKL, 2005 WL 1950116, at *4 (S.D.N.Y. Aug. 12, 2005) (applying New York contract law and reforming indenture due to a scrivener's error and mutual mistake).

Semper's selective quotation of certain of the Securities Administrator's communications to Holders is misleading and irrelevant. *See* Semper Br. at 9. In its effort to address the inconsistency between the Indenture and the Prosupp, the Securities Administrator has attempted to be both practical and transparent. Accordingly, prior to invoking a judicial remedy, the Securities Administrator communicated with all Holders to ascertain whether agreement could be reached to amend the Indenture on a consensual basis. If consensus had been possible, the inconsistency could have been resolved without the delay and expense associated with judicial proceedings. There was not, however, consensus among the Holders, which foreclosed amendment pursuant to the terms of the Indenture.

During this process, the Securities Administrator communicated regularly with all investors, and it informed them on more than one occasion that it retained the right to pursue judicial remedies. *See* Verified Petition Ex. 3 at 3 ("If the consent of 100% of the Class I-A-2 and Class I-A-3 Noteholders is not received, the Issuer, Indenture Trustee and Securities Administrator reserve the right (but assume no obligation) to take further action to resolve the inconsistency between the Indenture and the Prosupp, including legal action."); Ex. 4 at 2 ("The Issuer, Indenture Trustee and Securities Administrator reserve the right (but assume no obligation) to take further action to resolve the inconsistency between the Indenture and the

Prosupp, including legal action."). Contrary to Semper's suggestion, the Securities Administrator never suggested that it would forego the type of judicial remedy it has now pursued. The statements cherry-picked by Semper in no way constitute a relinquishment of the Securities Administrator's legislatively sanctioned right to secure a judicial resolution of this dispute. *See, e.g., 40 West 67th St. v. Pullman*, 296 A.D.2d 120, 135, 742 N.Y.S.2d 264, 275 (1st Dep't 2002) ("There can be no waiver of a statutory protection without a clear, unequivocal, and deliberate acknowledgement that this particular protection is known and that its relinquishment is intentional.") (citing *City of New York v. State*, 40 N.Y.2d 659, 669, 389 N.Y.S.2d 332, 340 (1976)).

## IV.  Semper's Arguments as to the Substantive Elements of a Claim for Reformation Are Irrelevant to Its Motion to Dismiss

The Securities Administrator takes no position on the arguments Semper makes in Point II of the Semper Br., which address the core substantive issue presented by the Petition. *See* Semper Br. at 10 *et seq.* Neither the Minn. TIP Statute nor interpleader law requires that the Securities Administrator, as a neutral stakeholder, plead the elements of claims or defenses that might be argued by interested parties. *See, e.g., Metropolitan Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. 2013) (when evaluating appropriateness of an interpleader action, "a court need not analyze the merits of the claims because the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim") (internal quotations and citation omitted). Any argument that the elements of a substantive claim for reformation of the Indenture have not been pled is therefore irrelevant to the issue whether the Securities Administrator has properly pled a claim for relief pursuant to the Minn. TIP Statute. As demonstrated in Point II above, the Securities Administrator has properly pled such a claim.

14

**V.     If the Court Finds That This Action Must Be Dismissed, It Should Grant the Securities Administrator Leave to Replead**

If the Court is inclined to grant Semper's motion to dismiss, it should also concurrently grant the Securities Administrator leave to replead its claim as an interpleader pursuant to 28 U.S.C. § 1335 and/or Federal Rule of Civil Procedure 22.  As described above, the Securities Administrator filed the Verified Petition pursuant to the Minn. TIP Statute, to avail itself of a statutory scheme designed to resolve trust-related disputes such as this one.  The Minn. TIP Statute lends itself to such disputes, because it provides, *inter alia*, for notice to all interested investors, permits such investors to appear and participate in the action, and explicitly authorizes the court to issue an order binding on all investors.  *See* Minn. Stat. §§ 501B.18, 501B.19, 501B.21.

The Securities Administrator believes that a federal statutory or rule interpleader action could incorporate key features of the Minn. TIP Statute.[11]  Accordingly, in the event the Court concludes that dismissal is appropriate, the Securities Administrator requests that it be granted leave to replead this action as an interpleader.  Both a Holder of Class I-A-2 Notes (Sceptre) and a Holder of Class I-A-3 Notes (Semper) have appeared and are apparently prepared to take competing positions as to allocation of Realized Losses between the two classes.  The Securities Administrator expects that Realized Losses will reach these classes in the coming months, if not weeks, and the outcome of the dispute as to the proper sequence for allocation of Realized Losses will eventually affect payments to Holders of the two classes of Notes.  The Securities Administrator could thus easily satisfy the interpleader pleading requirements, and it would be within the Court's broad discretion and inherent authority to permit repleading.  *See, e.g.*, *AIU Ins. Co. v. Mitsui O.S.K. Lines, Ltd.*, 897 F. Supp. 724, 726 (S.D.N.Y. 1995) ("Leave to amend a

---

[11] To that end, the Securities Administrator has continued to provide notice to Holders of significant developments since removal to federal district court.  *See* Johnson Decl. Exs. B-D.

pleading should be 'freely given' . . ., and leave should be denied only where amendment would be futile, where it is sought in bad faith, or where it would prejudice the opposing party.") (internal citation and quotations omitted).

## CONCLUSION

For the foregoing reasons, the Securities Administrator respectfully requests that the Court deny Semper's Motion to Dismiss in all respects.

Dated:      New York, New York
            April 25, 2014

                             ALSTON & BIRD LLP

                             __s/Michael E. Johnson_____
                             Michael E. Johnson
                             Carolyn R. O'Leary
                             90 Park Avenue
                             New York, New York 10016-1387
                             Tel. 212-210-9400

                             *Attorneys for Petitioner Wells Fargo Bank, N.A.,
                             solely in its capacity as Securities Administrator*