IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Trusteeship Created by American Home Mortgage Investment Trust 2005-2 relating to the issuance of Mortgage-Backed Notes pursuant to an Indenture dated as of October 1, 2007 | Case No. 1:14-CV-02494-AKH |

**CONSOLIDATED REPLY BRIEF IN RESPONSE TO SCEPTRE'S OPPOSITION AND WELLS FARGO'S OPPOSITION AND IN FURTHER SUPPORT OF SEMPER CAPITAL MANAGEMENT, L.P.'S MOTION TO DISMISS**

Michael A. Rollin
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
(303) 573-1600

*Attorneys for Semper Capital Management, L.P., as Investment Manager for Semper MIDAS Fund L.P.*

# TABLE OF CONTENTS

                                                                                  **Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 4

    I.   Reformation of the Indenture to Impair the I-A-3 Noteholders' Rights to Payment Without Consent Violates SCM's Rights under the Federal Trust Indenture Act of 1939 and the Indenture Itself ................................................................................................. 4

        A.  The Trust Indenture Act Ensures SCM's Right to be Free from Nonconsensual Impairment of Payment Under the Indenture .......................................................... 4

        B.  The Indenture Also Prohibits the Proposed Reformation .................................... 6

            1.  *Sections 5.07 and 9.02(vi) of the Indenture prohibit modification of a term that affects payment without noteholder consent* ........................................................ 6

            2.  *Section 10.12 of the Indenture cannot be read in contravention of other provisions in the Indenture and does not enlarge existing rights under the Indenture* ............................................................................................................... 7

            3.  *Section 9.01(a)(v) of the Indenture does not permit the requested reformation*................................................................................................................. 8

    II.   Wells Fargo Has Failed to Adequately Plead Mutual Mistake or Scrivener's Error in Support of its Reformation Claim........................................................................ 10

CONCLUSION ................................................................................................................ 12

# EXHIBITS

Exhibit H:    Bloomberg Chat from Wells Fargo to Semper Capital Management, L.P dated October. 4, 2012

# **TABLE OF AUTHORITIES**

**Cases**

*Aristocrat Leisure Ltd v. Deutsche Bank Trust Co. Am.*,
   No. 04CIV10014PKL, 2005 WL 1950116 (S.D.N.Y. Aug. 12, 2005)............................... 6

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
   85 F.3d 970, 974 (2d Cir. 1996) ................................................................................... 4

*Cagan v. Intervest Midwest Real Estate Corp.*,
   774 F. Supp. 1089, 1097 (N.D. Ill. 1991) ..................................................................... 11

*Citibank, N.A. v. Morgan Stanley & Co. Int'l PLC*,
    724 F. Supp. 2d 407 (S.D.N.Y. 2010) ................................................................... 10, 11

*Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*,
   No. 05 Civ. 0183(WHP), 2006 WL 2501884, at *8 (S.D.N.Y. Aug. 30, 2006) ............... 11

*Cruden v. Bank of New York*,
   957 F.2d 961, 968 (2d Cir. 1992). ................................................................................ 6

*Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*,
   No. 99 CIV 10517 HB, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999)……………………………5

*In re Board of Directors of Multicanal SA*,
   307 B.R. 384 (Bankr. S.D.N.Y. 2004) ........................................................................... 6

*KVOS, Inc. v. Associated Press*,
   57 S. Ct. 197, 201 (1936).............................................................................................. 6

*Porwick v. Fortis Benefits Ins. Co.*,
   No. 99 CV 10122(GBD), 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004) ................... 1

*Rex Medical, L.P. v. Angiotech Pharms. (US), Inc.*,
   754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010) .................................................................... 8

*Stonebridge Capital, LLC v. Nomura Intl. PLC*,
   68 A.D. 3d 546, 548 (1st Dep't 2009) ........................................................................... 8

*Upic & Co. v. Kinder-Care Learning Centers, Inc.*,
   793 F. Supp. 448 (S.D.N.Y. 1992) ................................................................................ 5

*YRC Worldwide Inc. v. Deutsche Bank Trust Co. Americas*,
   No. 10-2106-JWL, 2010 WL 2680336 (D. Kan. July 1, 2010),....................................... 5

**Statutes**

15 U.S.C. § 77ppp(b) (2014) ........................................................................................... 4

 N.Y. C.P.L.R. § 213(6) (2014) ....................................................................................... 1

**INTRODUCTION**

On this motion to dismiss, the narrow issue before the Court is whether Wells Fargo has pled a claim for reformation. It has not and it cannot. For the reasons set forth below and in Semper Capital Management, L.P.'s ("SCM") moving brief, the Verified Petition should be dismissed with prejudice.

*Wells Fargo's Attempt to Plead a Reformation Claim Fails as a Matter of Law*

Although not apparent from the face of its Verified Petition, in which Wells Fargo pled no actual causes of action, Wells Fargo's and Sceptre's opposition briefs reveal that Wells Fargo is attempting to plead a claim for common law reformation of contract based upon mutual mistake. Wells Fargo's claim fails as a matter of law because the reformation would violate the federal Trust Indenture Act ("TIA") and is prohibited by the Indenture itself, and because Wells Fargo fails to plead facts essential to the alleged mistake predicate to reformation.[1]

*Permitting Reformation Would Undermine the Trust Indenture Act*

If the Court accepts Wells Fargo's and Sceptre's strained reading of the Indenture's "Governing Law" clause to supplant federal law with state reformation law, it would set a dangerous precedent, undermining the very purpose of the TIA, and reading its Depression era protections out of indentures. Indeed, reformation of the particular provision at issue would

---

[1] Additionally, there can be no question that Wells Fargo's claims are time barred under N.Y. C.P.L.R. § 213(6) (2014), which expressly applies to "an action based upon mistake," and which courts consistently apply to equitable claims for reformation. *See, e.g., Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122(GBD), 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004). SCM does not brief this argument here because the Court has ordered the argument briefed in response to the pending motion for summary judgment. Order at 1, Doc. No. 32. Relatedly, SCM reserves its right to argue the doctrine of laches bars Wells Fargo's claim for reformation because Wells Fargo failed to exercise due diligence to address the issue when it was notified in November, 2010, Wells Fargo's Brief in Opposition of Motion to Dismiss ("Wells Fargo Br.") at 4, Doc. No. 30, and that reformation at this late stage and after Wells Fargo's contrary assurances, would severely prejudice SCM, disturb orderly market operations, and shake investor confidence.

leave the most central protection of indentures—the right to payment—subject to meddling, if not outright conversion. The Securities Administrator's participation in this effort is particularly troubling.

*Market Participants Have Validated the Existing Loss Allocation Priority, and a Reversal at This Late Stage Would Result in Substantial Prejudice to SCM, Who Purchased at a Price Consistent with the Express Terms of the Indenture*

Sceptre argues the existence of a scrivener's error as though it were a foregone conclusion and casts reformation as the only reasonable result, but the allocation of loss priority was in the Indenture from its inception. This means the parties purchased the Notes *with notice* of the loss allocation priority. Indeed, Wells Fargo as Securities Administrator, Deutsche Bank as Trustee, S&P and Moody's Ratings Agencies and other important market participants have all validated the Indenture's loss allocation priority, as has the marketplace itself. The I-A-3 class trades substantially *higher* than the I-A-2, exactly the pricing one would expect from the fact that the I-A-2 class is in the first loss position. As Sceptre itself argued, the "interest rate" on the security is a key indicator of risk, but it is not the stated interest rate on the security itself that determines the rate realized by the investor, it is the market pricing applied to the stated interest rate. The much higher price of the I-A-3 results in a lower rate of return than the I-A-2, validating the I-A-3's seniority with respect to loss allocation priority.

Moreover, far from receiving any windfall, SCM purchased the Notes based on pricing that was consistent with the express terms of the Indenture and has continued to hold the Notes based on the loss priority in the Indenture and the assurances of Wells Fargo that realized losses would in fact be allocated in accordance with the Indenture. SCM would therefore suffer substantial prejudice if the Court were to reverse the loss allocation priority notwithstanding the market's validation of the Indenture priority and Wells Fargo's assurances. In fact, a reversal of

the loss priority would result in the I-A-3 class suffering disproportionately greater loss as compared to the benefit realized by the I-A-2 class, given that the I-A-3 class is approximately 1/3 the size of the I-A-2 class (in terms of principal outstanding). Further, reversing the loss allocation priority would also potentially *confer a windfall on Sceptre*, who very well may have purchased its Notes at a price reflecting the Indenture allocation, and now seeks to use the legal process to profit at the disproportionate expense of SCM and other I-A-3 holders who are not before this Court but have substantial interests at stake.

*Reversal of the Loss Allocation Priority Would Undermine Market Predictability and Damage Market Integrity*

Of critical importance, reversing the loss allocation priority would damage market integrity. The purpose of the TIA is to promote market stability and investor protection. Reversing the loss allocation priority *nine years* after the Notes were issued and almost *four* years after Wells Fargo was expressly informed of the discrepancy between the Indenture and the Prospectus Supplement would not only harm SCM, it would undercut market participants' confidence in the certainty of the Indenture's terms. Even permitting this case to proceed beyond the motion to dismiss phase has the potential for significantly undermining the efficient operation of the marketplace, which thrives on certainty and requires predictability. Thus, Sceptre's claim that dismissal would lead to an "absurd result" is misleading. It is also belied by Wells Fargo's own Verified Petition, which shows that dismissal is precisely the result the parties should expect. Wells Fargo repeatedly told noteholders that it would, as it should, follow the Indenture. Wells Fargo also informed noteholders that any change to the loss allocation priority would require consent, and in fact Wells Fargo sought consent but never received it. In short, the only absurd result would be one that reverses the terms as written almost a decade ago and reflected in the market price to the detriment of noteholders who purchased the Notes expecting

3

to receive the commercial certainty and protections embedded in the Indenture and codified under the Trust Indenture Act.

*Sceptre Should Not Be Permitted to Recover at SCM's Expense*

Additionally, and to the extent Sceptre believes it is harmed by the purported scrivener's error, it remains free to sue the scrivener who it claims caused the harm.[2] Relief should not lie at the expense of SCM and other noteholders who reasonably expected, and were assured by Wells Fargo, that the Indenture would be honored.

## ARGUMENT

**I.   Reformation of the Indenture to Impair the I-A-3 Noteholders' Rights to Payment Without Consent Violates SCM's Rights under the Federal Trust Indenture Act of 1939 and the Indenture Itself**

   **A.   The Trust Indenture Act Ensures SCM's Right to be Free from Nonconsensual Impairment of Payment Under the Indenture**

In the wake of the Great Depression, Congress declared as a matter of federal public policy that "the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security…shall not be impaired or affected without the consent of such holder." 15 U.S.C. § 77ppp(b) (2014). The purpose of the TIA is to promote market stability and investor protection. *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 85 F.3d 970, 974 (2d Cir. 1996).

Sceptre turns this protection on its ear when it argues that *Sceptre's* rights to payment are those that are impaired absent reformation. Sceptre's Brief in Opposition to Motion to Dismiss ("Sceptre Br.") at 16, Doc. No. 28. Sceptre does not occupy and is not entitled to the senior position "*under such indenture security*" because under the Indenture, the Class I-A-3 holders

---

[2] Presumably, there is a "Legal, Valid and Binding" opinion on which the parties relied at the time the Notes were issued. A claim based upon the representations made in that opinion, or based upon other contractual, common law or statutory theories, could be made against the issuing party or its successor-in-interest.

4

are placed in the senior position. Sceptre Br. at 4-5. This priority has been in place for *nine* years. *Id.* at 2. The Indenture has always been publicly available for any interested investor to review before deciding whether to invest. Sceptre got what it bought. To the extent its claimed right to payment is impaired, that impairment was consensual and therefore fully in accord with the TIA.

Wells Fargo and Sceptre also miss the point and ignore the plain language of the statute when they distinguish SCM's cited case law. In each of those cases, the question before the Court was whether a party could take an action that would impair noteholder rights provided under the indentures without the consent of the affected noteholders. And in each case, the courts disallowed it. *Upic & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F. Supp. 448 (S.D.N.Y. 1992), *YRC Worldwide Inc. v. Deutsche Bank Trust Co. Americas*, No. 10-2106-JWL, 2010 WL 2680336 (D. Kan. July 1, 2010), and *Federated Strategic Income Fund v. Mechala Grp. Jamaica Ltd.*, No. 99 CIV 10517 HB, 1999 WL 993648 (S.D.N.Y. Nov. 2, 1999); *see also* SCM's Brief in Support of Motion to Dismiss ("SCM Br.") at 6-7, Doc. No. 20. *YRC Worldwide Inc.* is particularly relevant. SCM Br. at 6-7. Wells Fargo's and Sceptre's focus on the fact that each of these cases involved a majority group of shareholders attempting to foist a detrimental change on a minority group of shareholders, Wells Fargo Br. at 11; Sceptre Br at 16-17, draws a distinction without a difference. Moreover, their reading of these cases and the TIA ignores one of its most central protections: the right to be free from nonconsensual impairment of payment.

Further, it is probable, and their briefs are noticeably silent on this point, that Sceptre is exercising voting rights to direct Wells Fargo to prosecute this action against a minority noteholder and absent noteholders. If true, Sceptre's criticism of the cases cited by SCM would

5

boomerang on Sceptre and demonstrate further why it cannot deprive SCM of the benefits of its bargain and the protections of the TIA.

By contrast, Sceptre's and Wells Fargo's case law is irrelevant. The only indenture case Sceptre relies upon that permits reformation is *Aristocrat Leisure Ltd v. Deutsche Bank Trust Co. Am.*, No. 04CIV10014PKL, 2005 WL 1950116 (S.D.N.Y. Aug. 12, 2005).[3] While Wells Fargo and Sceptre cite *Aristrocrat* for the proposition that reformation of indentures is permissible, Sceptre Br. at 17; Wells Fargo Br. at 13, that question was not before the *Aristocrat* court, and the case is therefore not precedential for that proposition. *KVOS, Inc. v. Associated Press*, 57 S. Ct. 197, 201 (1936) (rulings are not precedential as to questions not decided).

In *Aristocrat* (and unlike here) there was evidence *from the parties involved in drafting the governing documents*—including the issuer—that there was a mistake, and there was agreement on the reformation. *Aristrocrat,* 2005 WL 1950116, at *4 ("All parties agree that the exchange rate in the Indenture…should be the converse of that printed.").[4] Thus, the disputed issue before the *Aristocrat* court was *not* whether reformation should occur, or whether reformation would affect the right to payment, or whether reformation was expressly prohibited by the indenture or the TIA. Instead, the issue was how to interpret the indenture in light of the reformation—specifically when the issuer's call rights were triggered. *Id*. *Aristocrat* is simply not relevant to whether the Court can or should reform the Indenture in this case.

### B. The Indenture Also Prohibits the Proposed Reformation

1. *Sections 5.07 and 9.02(vi) of the Indenture prohibit modification of a term that affects payment without noteholder consent*

---

[3] *In re Board of Directors of Multicanal SA*, 307 B.R. 384 (Bankr. S.D.N.Y. 2004) is irrelevant because this is not a bankruptcy case and therefore the bankruptcy exception does not apply.
[4] Indeed, according to, *Cruden v. Bank of New York*, a court cannot reform an indenture without joining the issuer as an indispensable party. 957 F.2d 961, 968 (2d Cir. 1992).

6

In no uncertain terms, and consistent with the TIA, Section 5.07 and 9.02(vi) of the Indenture require noteholder consent for any modification to the Indenture that affects payment.[5] Wells Fargo and Sceptre do not address the effect of Section 9.02(vi) other than to say it does not apply because it concerns "amendments" rather than "reformation," and Wells Fargo is not seeking an amendment. Wells Fargo Br. at 10; Sceptre Br. at 2, 14. The Court should reject these semantic arguments. By its express terms, Section 9.02(vi) applies when "changing" provisions, "eliminating" provisions, and "modifying" noteholder rights. *See* Indenture § 9.02(vi). In short, any change that affects payment (whether through amendment, reformation, or otherwise) triggers the protections of Sections 5.07 and 9.02(vi), which prohibit the change absent noteholder consent.

> 2. *Section 10.12 of the Indenture cannot be read in contravention of other provisions in the Indenture and does not enlarge existing rights under the Indenture*

Despite the Indenture's express prohibition against altering terms that affect payment without noteholder consent, Wells Fargo and Sceptre rely on the Governing Law provision in Section 10.12 of the Indenture to argue Wells Fargo nevertheless has a common law claim for reformation under New York law. Wells Fargo Br. at 12-13; Sceptre Br. at 15. Wells Fargo's and Sceptre's novel interpretation lacks merit and is foreclosed by the Indenture and basic rules of contract construction.

The Indenture itself prohibits Wells Fargo's and Sceptre's reading of the Governing Law clause:

---

[5] Specifically, Section 9.02(vi) permits changing provisions, eliminating provisions, or "modifying in any manner the rights of the Holders of the Notes under this Indenture; *provided, however*, that no such supplemental indenture shall, without the consent of the Holder of each Note affected thereby . . . modify any of the provisions of this Indenture in such manner as to affect the calculation of the amount of any payment of interest or principal due on any Note…." Verified Petition, Ex. 1 ("Indenture") § 9.02(vi), Doc. No.1, Attachment A, (emphasis in original). Similarly, Section 5.07 guarantees noteholders that their right to payment will not be invaded absent their consent. Indenture § 5.07.

7

> <u>Conflict with Trust Indenture Act</u>.  If any provision hereof limits, qualifies or conflicts with another provision hereof that is required to be included in this Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control.

Indenture § 10.06.  As discussed in SCM's opening brief, the Indenture provisions requiring consent before altering the right to payment are required by the TIA.  SCM Br. at 5-6.  Use of Section 10.12 to confer the right of reformation as applied to this case would—as Wells Fargo and Sceptre intend—read Sections 5.07 and 9.02(iv) out of the Indenture in violation of the TIA and Section 10.06 of the Indenture.  Therefore, the Governing Law clause—which is nothing more than that—must yield.

Furthermore, Wells Fargo's and Sceptre's reading violates two basic canons of contract construction:

First, "where a contract contains a provision that specifically addresses a particular contingency [], that provision must be relied on rather than some other, more general provision." *Rex Medical, L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 624 (S.D.N.Y. 2010). Here, Sections 5.07 and 9.02(iv) of the Indenture specifically address noteholders' right to payment and the requirement of consent before impairing such rights.

Second, in interpreting a contract, the Court must "avoid an interpretation that would leave contractual clauses meaningless." *Stonebridge Capital, LLC v. Nomura Intl. PLC*, 68 A.D. 3d 546, 548 (1st Dep't 2009) (citations omitted).  Eliminating SCM's right to be free from impairment absent consent would render those contractual (and statutory) protections an impermissible nullity.

Therefore, the general Governing Law clause cannot reasonably be construed to supplant Sections 5.07 and 9.02(iv).

> 3.  *Section 9.01(a)(v) of the Indenture does not permit the requested reformation*

Finding no support for nonconsensual reformation under Section 9.02(vi), Sceptre relies on Section 9.01(a)(v) to argue the loss priority can nevertheless be reversed without noteholder consent. *See* Sceptre Br. at 14-15. However, Section 9.01(a)(v) applies only when three conditions are met.

The first condition is the existence of an ambiguity or inconsistency *within* the Indenture. Indenture § 9.01(a)(v). There is no ambiguity here. SCM Br. at 10-12; *see also* Sceptre Br. at 18 (where Sceptre admits that, "…Wells Fargo has not asked the Court to resolve an ambiguity…."). Neither is there an inconsistency *within* the Indenture. The claimed inconsistency is between the Indenture and the prospectus supplement. SCM Br. at 10-12. Thus, Sceptre's reliance on Section 9.01(a)(v) fails on the first prong.

Second, and independently, to change the Indenture under Section 9.01(a)(v), Wells Fargo would have had to have an Opinion of Counsel as to the enforceability of the amendment. Indenture § 9.01(a). Wells Fargo, however, has not pled that it obtained an Opinion of Counsel. In fact, it appears Wells Fargo's outside counsel opined to the contrary: "*We have conferred with outside counsel on this issue and do not believe that an amendment without noteholders [sic] consent under 9.01(a)(v) of the Indenture is possible in this case.*" Bloomberg Chat from Wells Fargo to SCM (Oct. 4, 2012), attached as Exhibit H.

Third, and pursuant to Section 9.05 of the Indenture, any amendment executed under Section 9.01(a)(v) (and any other provision in Section 9) must conform to the requirements of the TIA:

> Conformity with Trust Indenture Act. Every amendment of this Indenture and every supplemental indenture executed pursuant to this Article IX shall conform to the requirements of the Trust Indenture Act as then in effect so long as this Indenture shall then be qualified under the Trust Indenture Act.

Indenture § 9.05. Thus, while 9.01(a)(v) permits modification of the Indenture's terms without noteholder consent under certain narrow circumstances, it does not permit it here, where the modification would not conform—and would in fact violate—the TIA.

These conditions and other factors also dispatch Sceptre's misplaced decimal point hypothetical. In the hypothetical where a scrivener's error reflects a 50% interest rate rather than a 5% interest rate, reformation may be possible *if* it results from an ambiguity or inconsistency, and the Trustee or Securities Administrator gets an Opinion of Counsel.[6] Those factors are not present here. If a noteholder is harmed in the hypothetical, it remains free, as Sceptre does here, to sue the parties who actually caused the harm.

In sum, and contrary to Wells Fargo's and Sceptre's arguments, Section 9.01(a)(v) does not permit reformation of the Indenture.

## II. Wells Fargo Has Failed to Adequately Plead Mutual Mistake or Scrivener's Error in Support of its Reformation Claim

Sceptre argues that Wells Fargo has pled the necessary elements for a reformation claim, but the very case Sceptre cites and relies upon, defeats its argument. *See Citibank, N.A. v. Morgan Stanley & Co. Int'l PLC,* 724 F. Supp. 2d 407 (S.D.N.Y. 2010).

In *Citibank*, the court stated that in order to plead a claim for mutual mistake, "the factual allegations must establish that both contracting parties shared the same erroneous belief as to a material fact, and their acts do not in fact accomplish their mutual intent." *Id.* at 416. The *Citibank* court relied, in part, upon the communications between *negotiating* parties to find that a claim for reformation based upon mutual mistake was sufficiently pled to defeat a motion for judgment on the pleadings *Id.* at 419.

---

[6] The reformation would still have to be timely, satisfy the elements of mutual mistake under state law, comport with equity, and not conflict with the TIA.

Evidence to state a claim for reformation has not been offered here. The drafting entity is not a party to this action. Moreover, a claim for reformation based upon mutual mistake must be pled with particularity under Rule 9(b), *id.* at 417, and proved by clear and convincing evidence, Sceptre Br. at 9-10 (conceding that clear and convincing evidence is required). *See also Core-Mark Intern. Corp. v. Commonwealth Ins. Co.*, No. 05 Civ. 0183(WHP), 2006 WL 2501884, at *8 (S.D.N.Y. Aug. 30, 2006) (reiterating that under Rule 9(b) the circumstances of the mistake "shall be stated with particularity," and granting summary judgment for defendant where plaintiff failed to plead with any particularity the facts of the mutual mistake.). Wells Fargo, far from pleading with particularity, has failed to state any factual allegations of the cause of the purported mistake, or any allegations that the mistake was mutual as between the negotiating parties, who are not all before the Court. *See Cagan v. Intervest Midwest Real Estate Corp.*, 774 F. Supp. 1089, 1097 (N.D. Ill. 1991) (finding that a "good averment of mistake should include: (1) the act or writing intended; (2) the act or writing done; (3) the cause of the mistake; and (4) whether the mistake was mutual, unilateral, or merely that of a scrivener."). As for the noteholders who *are* before this Court, there can be no mistake or mutuality of mistake on their part. When they purchased the Notes, the terms of the Indenture had already been negotiated, drafted and finalized by someone else, and the noteholders' acceptance of the Notes, bound them to the express terms of the Indenture.

Absent the basic facts necessary to state with particularity that there was a mutual mistake and a scrivener's error, the Court should dismiss Wells Fargo's reformation claim on this ground, as well.

**CONCLUSION**

Wells Fargo has not and cannot plead a claim for reformation.  Permitting Wells Fargo leave to replead would be futile because no form of action or pleading should or can undermine the language and purpose of the Trust Indenture Act or defeat the express terms of the Indenture. Wells Fargo's and Sceptre's effort to use the Governing Law clause to work an injustice on SCM and harm market integrity is directly prohibited by the *Conflict with Trust Indenture Act* provision.  Because it is undisputed that Wells Fargo did not obtain noteholder consent, the allocation of losses as set forth in Section 3.38 cannot be altered.  The procedural vehicle Wells Fargo employs, whether a trust instruction proceeding, an interpleader, or other, makes no difference to the fundamental point:  the outcome Wells Fargo and Sceptre seek is not cognizable under the law.

For the reasons set forth herein and in SCM's moving brief, Wells Fargo's Verified Petition should be dismissed with prejudice and without leave to replead.

Dated:  May 5, 2014

                                             Respectfully Submitted,

                                             s/ Michael A. Rollin
                                             Michael A. Rollin
                                             JONES & KELLER, P.C.
                                             1999 Broadway, Suite 3150
                                             Denver, Colorado  80202
                                             Telephone. (303) 573-1600
                                             Facsimile:  (303) 573-8133
                                             mrollin@joneskeller.com

                                             *Attorneys for Semper Capital Management, L.P., as*
                                             *Investment Manager for Semper MIDAS Fund, L.P.*