E55AATRUM                    Motion

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
     IN THE MATTER OF THE
3    TRUSTEESHIP CREATED BY
     AMERICAN HOME MORTGAGE
4    INVESTMENT TRUST 2005-2
     RELATING TO THE ISSUANCE OF
5    MORTGAGE-BACKED NOTES PURSUANT
     TO AN INDENTURE DATED AS OF
6    10/1/2007,
     ------------------------------x
7                                       New York, N.Y.
                                        May 5, 2014
8                                       2:30 p.m.

9    Before:

10                   HON. ALVIN K. HELLERSTEIN,

11                                       District Judge

12                        APPEARANCES

13   ALSTON & BIRD
          Attorneys for Wells Fargo
14   BY:  MICHAEL JOHNSON

15   JONES & KELLER
          Attorneys for Semper Capital
16   BY:  MICHAEL ROLLIN

17   QUINN EMANUEL URQUHART
          Attorneys for Sceptre, LLC
18   BY:  JONATHAN E. PICKHARDT

19

20

21

22

23

24

25

E55AATRUM                          Motion

1          (Case called)

2          THE COURT:  Michael Johnson, Wells Fargo.

3          MR. JOHNSON:  Good afternoon, your Honor.

4          THE COURT:  For the plaintiffs, Michael Roland.

5          MR. ROLLIN:  Yes, your Honor.

6          THE COURT:  And Jonathan Pickhardt.

7          MR. PICKHARDT:  Good afternoon, your Honor.

8          THE COURT:  For the defendants, Semper Capital

9   Management and Sceptre LLC, respectively.  One is Semper and

10  the other is Sceptre.

11          OK.  So, Mr. Johnson, your client's being attacked,

12  right?

13          MR. JOHNSON:  That's correct, your Honor.

14          THE COURT:  So take me through the allegations of the

15  complaint that in your opinion states is a legally sufficient

16  claim for relief.

17          MR. JOHNSON:  Your Honor --

18          THE COURT:  If you are the first bench you should go

19  up to the podium.

20          MR. JOHNSON:  OK.  Your Honor, this was a petition

21  commenced out in Minnesota pursuant to what's known as the

22  Minnesota Trust Instruction Statute.  It is a procedure by

23  which a trustee or other interested party can commence an

24  action for assistance in construing the terms of a trust

25  instrument or in seeking permission to deviate from the literal

E55AATRUM                          Motion

```
1    terms of the trust instrument.  Wells Fargo has a significant

2    presence in Minnesota and therefore was entitled to commence

3    this action pursuant to that statute.  The statute is similar,

4    somewhat akin to an interpleader statute at least in this

5    context because the securities administrator here was faced

6    with two competing positions as to what should be done in

7    respect of allocation --

8              THE COURT:  I understand the context.  I am asking a

9    different question.  Why is the complaint legally sufficient?

10   What allegations?

11             MR. JOHNSON:  Because pursuant to the statutes on

12   which we state our claim there are only two elements that are

13   required to state a proper claim.  The first is that the

14   petitioner be a trustee or an interested party.  And as the

15   securities administrator Wells Fargo is acting as an interested

16   party in fact it is acting in a position akin to a trustee in a

17   traditional trust circumstance.  Therefore, the first prong is

18   satisfied.

19             The second prong which is under Section 501(B)(16) of

20   the Minnesota statute is that the trustee or interested party

21   needs to be seeking judicial guidance as to the interpretation

22   of a trust instrument or for permission for deviation from the

23   literal terms of the trust instrument and that is the relief

24   that Wells Fargo has explicitly stated.  There is a trust

25   instrument here that is the indenture and the trustee or the
```

1   securities administrator is seeking an order from the Court

2   either that the terms of the indenture section that's at issue

3   here which is 3.38 should be literally applied or that the

4   securities administrator should be directed in essence to flip

5   the two allocation provisions that are at issue here and

6   therefore not follow the indenture as been literally written.

7          THE COURT:  So, Paragraph Three states that Wells

8   Fargo filed this petition because it is confronted with an

9   inconsistency between the indenture and related prospective

10  suffering.

11         And Paragraph Four describes the conflict.

12         And Paragraph Five states that Wells Fargo seeks entry

13  of an order reforming Section 3.38 of the indenture.

14         Alternatively directing that the realized losses shall

15  be allocated strictly pursuant to the existing terms of the

16  indenture.  So, it's saying that it will be content with either

17  of the conflicting interpretations.  All we want is an

18  authoritative interpretation.  Is that correct?

19         MR. JOHNSON:  Yes, your Honor.

20         THE COURT:  And that's all you need to plead under the

21  applicable statute of which is Wisconsin.

22         MR. JOHNSON:  "Minnesota", your Honor.  Correct.

23         THE COURT:  "Minnesota".  Now, the controlling law is

24  New York, isn't it?

25         MR. JOHNSON:  Yes, that's correct, your Honor.

1          THE COURT:  So you do the same thing in New York?

2          MR. JOHNSON:  Article 77 of the CPLR essentially

3    permits the same type of relief to be granted in New York

4    State.

5          THE COURT:  So the answer is "yes".

6          MR. JOHNSON:  Yes, your Honor.  And there's also

7    interpleader I would note, your Honor.  We take the position

8    that we have adequately pled the elements of interpleader

9    either rule or statutory.

10         THE COURT:  OK.  Mr. Rollin, you disagree, right?

11         MR. ROLLIN:  Your Honor, I don't disagree that both

12   Minnesota state law and New York is state law provide a

13   mechanism by which a trustee who has a question may go to court

14   and ask that that question be decided.  What I disagree with is

15   that under Minnesota law which I don't believe is applicable,

16   certainly, under New York Law that what they stated and the

17   elements of points that your Honor pointed out and the elements

18   that were stated by Mr. Johnson satisfy the required elements

19   under New York Law of a mutual mistake and I emphasize here the

20   word put mutually sufficient to warrant a potential

21   reformation.

22         THE COURT:  There is nothing here about mistake, is

23   there?

24         MR. ROLLIN:  That's right, your Honor, certainly

25   nothing about mutual mistake, nothing about the negotiations

1    between the parties, nothing about the prior agreement that was

2    memorialized allegedly improperly, none of the basic elements

3    which need to be pleaded with particularity.

4              THE COURT:  What about that, Mr. Johnson?

5              MR. JOHNSON:  Two things, your Honor.  Paragraph Four

6    does allege upon information and belief that there was a

7    drafting error.  And second, your Honor, it's not required that

8    had we plead the elements of any substantive cause of action

9    which might support one interpretation or another to state an

10   adequate claim.

11             THE COURT:  So, Mr. Rollin, it does seem to be an

12   allegation of a drafting error and a plead for reformation.

13             MR. ROLLIN:  Your Honor, there is an allegation of a

14   drafting error but that is not sufficient to meet the high

15   standard under New York Law of a mutual mistake.  For example,

16   your Honor, there is no allegation that there was mutuality of

17   mistake.  There could be a unilateral mistake that caused that.

18   That unless it was accompanied by fraud would not give a right

19   to reformation under New York Law.

20             THE COURT:  I think there's sufficient notice to put

21   you on notice that Wells Fargo wants an interpretation either

22   way and you have a position that you can express and you know

23   what you need to express it about.  So you can do a sufficient

24   pleading and so can Mr. Pickhardt.

25             Anything else you want to say?

E55AATRUM                      Motion

1          MR. ROLLIN:  Yes.  On that particular issue and I

2     assume there are points related to the Indenture and Trust

3     Indenture Act which I'm prepared on but with respect --

4          THE COURT:  Well, what's the source of law?  What is

5     the source of right for reformation?  Is that New York Law or

6     is it federal law?

7          MR. ROLLIN:  I believe, your Honor, and the case law

8     is clear there is no right to reformation to the extent that it

9     would be in contradiction of the federal law which is the Trust

10    Indenture Act and Indenture itself which preclude reformation

11    on this issue on the impairment of rights without consent.

12         THE COURT:  So the source of law is New York Law and

13    the defense is federal law?

14         MR. ROLLIN:  Your Honor, I -- actually, I don't

15    believe while the governing law clause calls for that the

16    indenture shall be interpreted in accordance with New York law

17    that does not create a right of reformation in contravention of

18    the TIA and so I don't believe there's a source of law --

19         THE COURT:  That's a defense.  If New York says you

20    can have a mutual reformation you could have a reformation

21    because of a mutual mistake and something in federal law says

22    you can't, then you have to set up a defense in your answer.

23         MR. ROLLIN:  Your Honor, I don't believe there's a

24    right that I have to defend against.

25         THE COURT:  He's pleading a right and if you say that

E55AATRUM                          Motion

```
 1  federal law preempts that it's matter a defense.

 2              MR. ROLLIN:  He may have pleaded a right, your Honor.

 3  But just because somebody pleads a right doesn't create a

 4  right.

 5              THE COURT:  It's a well pleaded complaint is all that

 6  we need for establishing jurisdiction and getting it in a court

 7  and you have to do it by way of defense, not by motion but by

 8  defense.  The only thing I am troubled by is Mr. Johnson's

 9  jurisdiction.  What's the basis of jurisdiction?  You can't

10  have diversity because have you an LLC.  An LLC requires me to

11  examine the citizenship of each and all its members.

12              MR. JOHNSON:  Your Honor, this was removed from state

13  court where we filed to federal court by Semper and Semper

14  alleged -- excuse me -- by Sceptre -- apologize, your Honor.  I

15  get the two parties mixed up myself.  Sceptre removed this and

16  alleged they were divorced from Wells Fargo.  And Wells Fargo

17  is a South Dakota based national bank.

18              THE COURT:  You didn't move to remand though?

19              MR. JOHNSON:  No one has moved to remand, that is

20  correct, your Honor.  We did not have a basis upon which to

21  dispute the assertion of jurisdiction by Sceptre.

22              THE COURT:  Mr. Pickhardt, what is the basis of

23  jurisdiction?

24              MR. PICKHARDT:  Your Honor, it is both diversity as at

25  the time of removal.
```

E55AATRUM                    Motion

1          THE COURT:  Who is the first?  You have an LLC.

2          MR. PICKHARDT:  Correct, your Honor.

3          THE COURT:  Do you know the citizenship of each and

4    all its members?

5          MR. PICKHARDT:  Your Honor, we did look into that at

6    the time that we prepared the notice of removal.  I don't have

7    it off the top my head.  I could get it for the Court.  None of

8    the members were -- I believe it was South Dakota -- none of

9    them are located in South Dakota.

10         THE COURT:  Did you allege it in your notice of remand

11   that each of the citizens of the LLC lived or are citizens of

12   states other than South Dakota?

13         MR. PICKHARDT:  We allege that there was complete

14   diversity.  I don't have notice of removal here.  We also

15   alleged that there was diversity based upon the Edge Act, your

16   Honor.

17         THE COURT:  Well, tell me about the Edge Act.

18   International transaction?

19         MR. PICKHARDT:  Yes, your Honor.  Here we have a

20   national bank that is a party and I believe, your Honor, we

21   believe that there may be note holders who are located offshore

22   and we believe that that was sufficient to meet the Edge Act.

23   But in any event, the Edge Act was not necessary as there was

24   clear diversity and nobody has disputed the fact that there is

25   diversity.

1          THE COURT:  I am disputing it.

2          MR. PICKHARDT:  Yes, your Honor.

3          THE COURT:  I have to be satisfied that there is

4    subject matter jurisdiction.

5          MR. PICKHARDT:  Understood, your Honor.

6          THE COURT:  And unless you satisfy me you don't have

7    it.  It's your burden to show me.

8          MR. PICKHARDT:  Understood, your Honor.

9          THE COURT:  How would you show it?

10          MR. PICKHARDT:  Your Honor, we can put in a

11   declaration as to the location of each of the members of the

12   LLC to the Court.  If the Court would like us to put in

13   evidence with respect to where each member of the LLC is

14   located and we'll show that none of them are located in South

15   Dakota.

16          THE COURT:  I do.  When are you going to do that?

17          MR. PICKHARDT:  We can do that tomorrow, your Honor,

18   if you would like us to do so.

19          THE COURT:  I do.  And what about the Edge Act?

20          MR. PICKHARDT:  The Edge Act, your Honor.  We would

21   require I think discovery in order to determine the location of

22   all of the note holders to confirm whether there are note

23   holders who are located outside of the country.

24          THE COURT:  Is that all that you require?

25          MR. PICKHARDT:  We believe so, your Honor, that with

E55AATRUM                     Motion

```
 1   the Edge Act where have you a national banking association and
 2   there is an international component to the transaction that
 3   that is sufficient to provide for jurisdiction under the Edge
 4   Act.
 5        THE COURT:  The claim must arise, quote, out of
 6   transactions involving international or foreign banking or out
 7   of international or foreign financial operations.  I don't know
 8   that the location of the note holder outside the United States
 9   would satisfied Edge Act jurisdiction.
10        MR. PICKHARDT:  Understood, your Honor.  And your
11   Honor, we at this point would not ask the Court to reach that
12   there is jurisdiction on that basis as we think that there is
13   clearly jurisdiction based upon diversity.
14        THE COURT:  What's the remedy if you can't prove
15   jurisdiction?
16        MR. PICKHARDT:  If we are unable to prove
17   jurisdiction, your Honor, then presumably there would be a
18   remand to state court.
19        THE COURT:  Which court?
20        MR. PICKHARDT:  Your Honor, I believe without having
21   considered that issue fully that it would likely be a remand to
22   the Court in which it was filed in Minnesota.
23        THE COURT:  Well, at four o'clock tomorrow I want you
24   to give me declarations and memoranda if necessary showing my
25   jurisdiction.
```

E55AATRUM                        Motion

1          MR. PICKHARDT:  Yes, your Honor.

2          THE COURT:  Anything else you want to tell me on the

3   motion, Mr. Rollin?

4          MR. ROLLIN:  Your Honor, not on the motion.  I do have

5   some comments with respect to the upcoming summary judgment and

6   the leave for discovery so your Honor can get to the merits.

7          THE COURT:  Let me deal with the motion first.

8   Subject to the establishment of the jurisdiction by four o'

9   clock tomorrow the motion to dismiss is denied.  There is a

10  sufficient allegation of the claim for relief to satisfy the

11  pleading requirements of rule eight.  As pointed out in oral

12  argument the allegation of an inconsistency between the

13  indenture and the related prospectus is pointed out in

14  Paragraphs Three and Four of the complaint here called the

15  "verified petition".

16          The allegation of Scrib and Azera is alleged in

17  Paragraph Four by its nature is Scrib and Azera reflects a

18  mistake in relationship to both of the retracted parties.  The

19  notes themselves and the indenture are sufficiently described

20  in the following allegations.  The -- and the conflict is

21  described starting with Paragraph 15 of the complaint.  The

22  effort to obtain consent which would be here described as an

23  effort to pursue inadequate remedy of law is adequate and

24  described in the concluding paragraph of the relief that is

25  sought.  Also it puts the respondents on sufficient notice of

1   what is requested.  An action by a trustee or someone

2   equivalent for instructions with regard to conflicting

3   interpretations are -- instruments is well-known to equity law

4   both in New York and other states and a cause of action is

5   thereafter sufficiently alleged.

6          With regard to what occurs now, my scheduling order

7   has covered the points and I do not think I need to elaborate

8   on that again.

9          What I am going to need to decide this on the merits

10  is sufficient evidence whether in collateral instruments or in

11  testimony that's competent or otherwise to resolve the issue.

12  And I understand it must be resolved speedily and there must be

13  a definitive answer given to the trustee in order for proper

14  business arrangements to follow.  So, I'll endeavor to do that.

15  And I don't think it's necessary to go beyond that with regard

16  to the decision I've expressed today.

17          Mr. Rollin.

18          MR. ROLLIN:  Yes, your Honor.  There are issues that

19  go to the merits and the entitlement of equitable relief that I

20  believe your Honor must hear in order to have a record before

21  the Court to make this decision and we're prepared --

22          THE COURT:  Now or when I hear the summary judgment?

23          MR. ROLLIN:  When you hear the summary judgment.

24          THE COURT:  What makes you think I won't?

25          MR. ROLLIN:  Well, your Honor, we believe we're

1   entitled to and have a need to conduct some discovery.

2            THE COURT:  Before I reach summary judgment?

3            MR. ROLLIN:  Your Honor, we believe under the rule

4   that we're entitled to discovery before summary judgment or, of

5   course, we'll argue if we don't have discovery beforehand that

6   the case is not appropriate for summary judgment.

7            THE COURT:  Who's making a motion for summary

8   judgment?

9            MR. PICKHARDT:  Sceptre is, your Honor.

10           THE COURT:  OK.  Do you think you need discovery?

11           MR. PICKHARDT:  Your Honor, we don't believe so.  We

12  believe that it's apparent from the face of the document

13  itself.

14           THE COURT:  I think I'd be more secure knowing what

15  the negotiators said to each other or otherwise communicated to

16  each other or knowing that there is no such information.  If

17  there is information I think it should be -- parol evidence

18  does not bar such evidence.  At this point I'm not ruling that

19  it's barred.

20           MR. PICKHARDT:  Your Honor, the motion that is being

21  presented next week does include a motion or summary judgment

22  but it also importantly includes a motion for a preliminary

23  injunction and that is why we need to be put on calendar in the

24  speedy fashion so that that can be taken up.

25           THE COURT:  When do the losses have to be counted?

1          MR. PICKHARDT:  The next report that is going to be

2     prepared by Mr. Johnson's client is going to be dated as of the

3     May 25th.  And my understanding that the report actually is

4     prepared as of the 18th.  And then there will be monthly

5     allocations of realized losses thereafter.

6          THE COURT:  Suppose I enlarge the period?

7          MR. PICKHARDT:  Your Honor, we would be perfectly

8     happy with additional time if the Court would like for there to

9     be a fuller record at the time the Court hears us on the

10     merits.  My client's only concern is that we be heard on the

11     preliminary injunction or TRO before there is any allocation of

12     realized losses so that the statues quo at least can be

13     maintained.

14          MR. JOHNSON:  Your Honor, we intend to impose the

15     request for a preliminary injunction.  It is not a simple

16     matter here.

17          THE COURT:  I don't think a preliminary injunction

18     will do because it's not final.

19          MR. JOHNSON:  That's correct, your Honor.  Our --

20          THE COURT:  Furthermore, I have to balance the

21     equities and any receptiveness toward Mr. Pickhardt's position

22     about raise doubt with regard to your position and vice versa.

23     So, I don't think a preliminary injunction is necessary.  So I

24     think I have to decide this on the merits.  If I can by summary

25     judgment I'll do so by summary judgment.  But it would be even

E55AATRUM                          Motion

1    better to have a complete record and to make my rulings

2    conclusive.  This is an equity issue.  It's triable to me.  I

3    don't need a jury.  There are issues of credibility.  I would

4    love to decide them.  So, I think Mr. Rollin is correct.  I

5    think we need discovery and if the order I lay down is not

6    sufficient to accommodate that, then we have to change it.

7              MR. ROLLIN:  That's what we'd ask, your Honor.

8              THE COURT:  So, let's go off the record.  Let's stay

9    on record.  How many witnesses do you need?

10             MR. ROLLIN:  Your Honor, I certainly would like to

11   take a 30(B)(6) deposition and get --

12             THE COURT:  Let's step back.  Who knows how many

13   people negotiated this deal?

14             MR. JOHNSON:  Your Honor, this is very strange

15   circumstance in which I think the party that is best able to

16   answer that question and probably the ultimate question in this

17   case is not here.  He is not represented here.  My client,

18   Wells Fargo, had very little involvement in the negotiation

19   draft of the underlying documents and I am fairly certain that

20   neither Sceptre nor Semper had any involvement.  So, I think

21   that if it is necessary and Wells Fargo does not know that it

22   is, to take discovery of the drafts persons here, if that is

23   necessary it's going to involve nonparty discovery almost

24   certainly.

25             THE COURT:  Doesn't make any difference to party or

1    nonparty.  I think I need to know an outside date.

2              MR. JOHNSON:  I think, your Honor, I might defer to

3    the other parties here who are going to probably ultimately be

4    trying to prove their cases.  We are neutral on the ultimate

5    issue here.  So, I think that it's up to Mr. Rollin and

6    Mr. Pickhardt if there is to be discovery, how long that would

7    take.

8              MR. ROLLIN:  There is a sense of urgency based on this

9    May 25 date that I think is overstated and I'd like to explain

10   that for a moment.

11             THE COURT:  I agree, because I could enlarge time.

12   But there is a period of time.  There's time that's reached

13   which becomes uncomfortable.  What we're doing here is

14   distributing money.  So, if it's just a matter of retention of

15   the money by the trustee for rather than the short period of

16   time no one is hurt but I think these instruments are traded.

17   I think people need money for various purposes and therefore

18   there is an urgency that may not be related to us specific

19   event but generally.

20             MR. ROLLIN:  Your Honor, may I make one more point in

21   connection with the urgency?  I think Mr. Johnson will confirm

22   that even if we go forward with the allocation of loses as set

23   forth in the indenture during the pendency of this that even if

24   there is a ruling that flips that order, the trustee and the

25   securities administrator are able to restate those bonds and so

1    this is something that's done commonly.  So this is not a drop

2    dead date of May 25 and June 25.

3            THE COURT:  Mr. Rollin, the problem is that you need

4    unanimity to do that and you don't have it and you probably

5    won't get it.  So you need the comfort of a court order.  I

6    want to do that minimally.

7            Off the record.

8            (Discussion held)

9            THE COURT:  Back on the record, Sonya.

10           The parties came back with this suggestion that they

11   tried as much as possible to conduct discovery that we have

12   discussed and be ready for trial June 9 and 10 with the idea

13   that I would dictate a decision immediately following the close

14   of evidence on the 10th.  In order to do that they have to have

15   some formal or informal proceedings with a defunct law

16   partnership Thatcher Proffitt firm.  Thatcher Proffitt,

17   apparently, was involved in the negotiations and the counsel

18   did not know of any other place where they can find the

19   pertinent records.  So they need to pursue whoever is the

20   custodian of records at Thatcher Proffitt to obtain permission

21   to find the records, get them produced and on the basis of the

22   production identify witnesses, the depositions to the extent

23   needed.  They should know by May 28th at the latest whether or

24   not they have sufficient information to conduct a trial on

25   June 9 and 10.  As long as they let me know before four o'

E55AATRUM                    Motion

1    clock on May 28 I can decide whether to maintain the June 9 and

2    10 dates or to adjourn to a later date.  If I have to adjourn

3    I'll probably have to adjourn to the last two weeks of July.

4            Is that satisfactory, Mr. Rollin?

5            MR. ROLLIN:  It is, your Honor.  Just for clarity if I

6    may with respect to the preliminary injunction and the summary

7    judgment motion?

8            THE COURT:  Preliminary injunction motion is to be

9    withdrawn and the summary judgment motion also is to be

10   withdrawn.

11           MR. PICKHARDT:  That's correct, your Honor.

12           THE COURT:  With leave to submit motions ideally under

13   Rule 52 or preliminary briefing along with findings of fact and

14   conclusions of law pointing towards the October 9 -- sorry --

15   the June 9 or 10 trial.

16           MR. PICKHARDT:  One other question regarding

17   clarification.  My understanding is that Wells Fargo with

18   respect to the reports that are to be issued in May will either

19   be issuing two reports or be issuing a report that take no

20   position with respect to the allocation of realized losses that

21   will be decided by the Court in June.

22           MR. JOHNSON:  Yes.  For the month of May we should be

23   able to accomplish that.

24           THE COURT:  Yes.  And the only other thing is that I

25   will need my four o' clock tomorrow proofs of subject party

E55AATRUM                    Motion

 1   jurisdiction and proofs of failing an identification of which

 2   court should remand to.  I think the remand would be the

 3   Supreme Court of New York County.  Case came here --

 4   convenience and transferred.

 5          MR. PICKHARDT:  Excuse me, your Honor?

 6          THE COURT:  How did the case come from Minnesota to

 7   New York?

 8          MR. PICKHARDT:  There was a transfer motion on

 9   stipulation of the parties in interest as well as Wells Fargo.

10          THE COURT:  Seems to me that if the case is

11   transferred here from the District of Minnesota to the Southern

12   District of New York, if there a jurisdiction then the matter

13   will to go -- that's the default.  If you find something

14   different or better and you want to go back to Minnesota I'll

15   consent.

16          MR. PICKHARDT:  Thank you, your Honor.

17          THE COURT:  Anything else?

18          MR. ROLLIN:  I didn't understand what the agreement

19   was with respect to the reports and the allocation of realized

20   losses come May 25.

21          THE COURT:  There will be two reports.  A report

22   expressed in the alternative.

23          MR. JOHNSON:  Your Honor, I think what we would prefer

24   to do is not have to do two full reports cause there's a lot of

25   information.  I think that what we would like is those portions

E55AATRUM                    Motion

```
1    in those reports that reflect allocation of losses there will
2    be a row added or a column added or a footnote or something
3    that explains that if losses were allocated in the other manner
4    then this would be --
5          THE COURT:  No, you should not do anything that
6    expresses implication of you as to which of the two you favor.
7    So, I think you can do one report but you can recite these
8    proceedings and say pending instructions you are doing a report
9    based on both alternatives.
10         MR. PICKHARDT:  Would it be OK, your Honor, if we
11   mentioned that we were doing that pursuant to order of the
12   Court?  That might facilitate --
13         THE COURT:  Yes, you should do so and this should be
14   part of the provisions.
15         MR. PICKHARDT:  Your Honor, as well when we issue
16   subpoenas for documents we can indicate that as an order of the
17   Court that parties --
18         THE COURT:  I'll sign those.  You want me to sign
19   those?
20         MR. PICKHARDT:  Yes, please, your Honor.
21         MR. ROLLIN:  A further point of clarification in light
22   of the expedited nature of the proceedings, I wonder whether
23   the Court will dispense with a need to answer rather than just
24   role it into the pretrial submissions that --
25         THE COURT:  I think you should answer.  Better you to
```

E55AATRUM                         Motion

 1   answer.

 2              MR. ROLLIN:  Will do.

 3              THE COURT:  You can pick your date.  I don't know if

 4   that's a good idea.  You should give your answer on the record.

 5   Try and do it by May 9.

 6              MR. ROLLIN:  May we have the Monday at 12?

 7              THE COURT:  Don't ever do Mondays.  That means you

 8   have weekend work.  So do Tuesday.  Can't do it by end of

 9   business May 9, do it Tuesday.

10              MR. ROLLIN:  Thank you, your Honor.

11              THE COURT:  OK.  That closes us with the motion to

12   dismiss under Rule 12(B)(6) is denied, subject to clarification

13   of jurisdiction.

14              OK.  Thanks very much.

15                              (Adjourned)

16

17

18

19

20

21

22

23

24

25