IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Trusteeship Created by American Home Mortgage Investment Trust 2005-2 relating to the issuance of Mortgage-Backed Notes pursuant to an Indenture dated as of October 1, 2007. | Case No. 1:14-cv-02494-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF PARTY IN INTEREST SCEPTRE, LLC'S MOTION TO DISMISS SEMPER CAPITAL MANAGEMENT, L.P.'S CROSS-CLAIMS**

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Party In Interest Sceptre, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................2

    A.    The AHM 2005-2 Mortgage-Backed Notes ...........................................................2

    B.    Wells Fargo's Commencement Of The Trust Instruction Proceeding....................4

    C.    SCM's Cross-Claims Against Sceptre .....................................................................4

ARGUMENT .....................................................................................................................5

I.      THE LEGAL STANDARD FOR A MOTION TO DISMISS ............................................5

II.    THE INDENTURE'S "NO ACTION" CLAUSE BARS SCM'S CROSS-
       CLAIMS .......................................................................................................................5

III.   EACH OF SCM'S CROSS-CLAIMS MUST BE DISMISSED FOR FAILURE
       TO STATE A CLAIM ...................................................................................................7

    A.    SCM's Breach of Contract Claim Fails Because There Is No Contractual
          Relationship Between SCM and Sceptre .................................................................8

    B.    SCM's Implied Covenant Of Good-Faith And Fair Dealing Claim Fails
          For The Same Reason As Its Breach Of Contract Claim.......................................10

    C.    SCM Fails To State A Valid Tortious Interference With Contract Claim,
          Which Is Barred In Any Event By The Economic Interest Defense .....................10

          1.    SCM Failed To Allege Any Breach Of Contract, Which Is A
               Necessary Prerequisite Of Tortious Interference .......................................11

          2.    SCM Has Not Alleged That Sceptre's Actions Were Intentional
               and Without Justification ............................................................................13

          3.    Any Actions Sceptre May Have Taken Were Out Of Economic
               Interest, And SCM Has Not Plausibly Alleged Actual Malice.................14

    D.    SCM Has Failed To State A Claim In Equity For Unjust Enrichment .................15

CONCLUSION .................................................................................................................17

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
  651 F. Supp. 2d 155 (S.D.N.Y. 2009).....................................................................8, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................5

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008)........................................................................8

*Born v. Schrenkeisen*,
  110 N.Y. 55 (1888)...................................................................................................12

*Chevron Corp. v. Donziger*,
  871 F. Supp. 2d 229 (S.D.N.Y. 2012)......................................................................16

*Clark v. Darby*,
  300 A.D.2d 732 (N.Y. 3d Dep't 2002)......................................................................16

*D & L Holdings v. RCG Goldman Co.*,
  734 N.Y.S.2d 25 (1st Dep't 2001)............................................................................12

*Dalton v. Educ Testing Serv.*,
  87 N.Y.2d 384 (1995)...............................................................................................11

*Dragon Investment Co. II LLC v Shanahan*,
  49 A.D.3d 403 (1st Dep't 2008)...............................................................................17

*Drummond v. Morgan Stanley & Co.*,
  1996 WL 631723 (S.D.N.Y. Oct. 31, 1996).......................................................14, 15

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011)........................................................................7

*Emmet & Co., Inc. v. Catholic Health East*,
  37 Misc. 3d 854 (Sup. Ct. N.Y. Cnty. Sept. 25, 2012),
  *aff'd* 114 A.D.3d 605 (1st Dep't 2014)...........................................................6, 7, 10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)........................................................................................8

*Felsen v. Sol Caf Mfg. Corp.*,
  24 N.Y.2d 682 (1969)...............................................................................................14

*Foster v. Churchill,*
   642 N.Y.S.2d 583 (1996) ...............................................................................14

*Hbouss v. Coca-Cola Enterps., Inc.,*
   287 Fed. Appx. 903 (2d Cir. 2008) ...............................................................10

*Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.,*
   2012 WL 3542196 (S.D.N.Y. Aug. 15, 2012) ..............................................12

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.,*
   2014 WL 1383703 (S.D.N.Y. March 31, 2014) .............................................7

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,*
   157 F.3d 933 (2d Cir. 1998) ..........................................................................10

*Jane St. Capital, LLC v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
   972 N.Y.S.2d 143 (Sup. Ct. N.Y. Cnty. 2013) .............................................17

*Jurgensen v. Felix Storch,*
   2012 WL 2354247 (S.D.N.Y. June 14, 2012) ...............................................15

*Mandarin Trading Ltd. v. Wildenstein,*
   16 N.Y.3d 173 (2011) .............................................................................8, 15

*Miller v. Wells Fargo Bank, N.A.,*
   2014 WL 34723 (S.D.N.Y. Jan. 30, 2014) ...................................................10

*NBT Bancorp v. Fleet/Nortstar Fin. Grp.,*
   87 N.Y.2d 614 (1996) ...................................................................................11

*Oddo Asset Mgmt. v. Barclays Bank PLC,*
   19 N.Y.3d 584 (2012) .............................................................................11, 13

*Paramount Film Distrib. Corp. v. State of N.Y.,*
   30 N.Y.2d 415 (1972) ...................................................................................16

*Prestige Brands Inc. v. Guardian Drug Co.,*
   951 F. Supp. 2d 441 (S.D.N.Y. 2013) ..........................................................10

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,*
   309 A.D.2d 288 (1st Dep't 2003) .................................................................12

*Stonebridge Capital, LLC v. Nomura Int'l, PLC,*
   24 Misc. 3d 1218(A) (Sup. Ct. N.Y. Cnty. 2009) ........................................12

*Wilson v. Dantas,*
   2013 WL 92999 (S.D.N.Y. Jan. 7, 2013) .....................................................13

*Walnut Place LLC v. Countrywide Home Loans, Inc.,*
   96 A.D.3d 684 (1st Dep't 2012) .....................................................................7

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.,*
   8 N.Y.3d 422 (2007) .....................................................................................14

## <u>Statutes and Rules</u>

Federal Rule of Civil Procedure 12(b)(6) ........................................................................5

Minn. Stat. § 501B.16 *et seq*.......................................................................................1

Party In Interest Sceptre, LLC ("Sceptre") respectfully submits this memorandum of law in support of its Motion to Dismiss the cross-claims against it brought by Party In Interest Semper Capital Management, L.P.'s ("SCM").

## PRELIMINARY STATEMENT

Currently before this Court is a proceeding initiated by Wells Fargo Bank, N.A. ("Wells Fargo"), as Securities Administrator for the American Home Mortgage Investment Trust 2005-2, seeking instruction as to the proper allocation of losses as between two classes of Noteholders in the Trust, in order to resolve uncertainty created by a drafting error in the Indenture that governs the Notes.  As is required by Minn. Stat. § 501B.16 *et seq.*, Wells Fargo notified Noteholders affected by the allocation provision in question, and two such parties—Sceptre, an owner of I-A-2 Notes, and SCM, an owner of I-A-3 Notes—have appeared as Parties In Interest.  The Court is scheduled to take evidence on the question of whether the Indenture should be reformed to correct for the drafting error at a trial commencing on June 9, 2014.  Apparently understanding that the evidence in support of reformation is overwhelming, SCM has launched a bevy of meritless counterclaims and cross-claims that would require Sceptre (or Wells Fargo) to compensate Semper for losses on its investment in I-A-3 Notes if the Court reforms the Indenture to reflect its original intent.  SCM's cross-claims seeking to hold Sceptre liable for whatever impact this proceeding will have on SCM's investments are frivolous, and Sceptre respectfully requests that the Court dismiss those cross-claims in conjunction with its ruling on the merits of the reformation claim at the trial commencing on June 9.

As an initial matter, SCM lacks standing to bring its cross-claims on account of the clear restrictions in the "No Action" clause in the Indenture, which is intended to bar precisely the type of claims that SCM seeks to bring here.  The cross-claims should be dismissed in their entirety on this basis alone.

In any event, even if SCM's cross-claims were not barred by the "No Action" clause (which they are), they each suffer from numerous fatal deficiencies that warrant dismissal at the pleading stage for failure to state a valid claim.  For example, SCM's claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail for the simple reason that SCM has failed to allege the existence of a contract between SCM and Sceptre (because there is none).  Its tortious interference claim also fails as SCM has failed to allege any breach of contract or that Sceptre has intentionally interfered with any contract without justification.  In addition, SCM's tortious interference claim fails as Sceptre is protected by the economic interest doctrine.  Lastly, SCM's unjust enrichment claim must also be dismissed because it is premised on the nonsensical, and unsupported, notion that the losing party to a lawsuit properly decided by a court can sue the prevailing party for being "unjustly enriched" by the court's judgment.  Not only is this theory of unjust enrichment devoid of even a modicum of precedential support, but it is against public policy and would lead to the absurd result of subjecting prevailing parties in a lawsuit to potential civil liability *to the losing party* by virtue of having won its day in court.  For these reasons and others discussed further herein, SCM's cross-claims against Sceptre should be dismissed.

## STATEMENT OF FACTS

### A.    The AHM 2005-2 Mortgage-Backed Notes

American Home Mortgage Investment Trust 2005-2 ("AHM 2005-2") is a special purpose vehicle created to issue mortgage-backed Notes to investors pursuant to the Indenture, dated as of June 22, 2005, amongst AHM 2005-2, as Issuer; Wells Fargo, as Securities Administrator; and Deutsche Bank National Trust Company, as Indenture Trustee.  The Notes were marketed and sold pursuant to a Prospectus Supplement dated June 20, 2005 (the "ProSupp") and a Term Sheet dated June 13, 2005 (together, the "Offering Documents").

2

(Counterclaims & Cross-Claims ¶¶ 25-28 (Dkt.47).)[1]  The Notes were organized into different classes of Notes, with different corresponding interest rates and levels of risk.  As a general matter, and as is typically the case in most mortgage-backed securities issuances, the more senior the class of Notes, the lower the risk of non-payment and, consequently, the lower the interest rate payable on that class of Notes.  The most senior class of Notes is the Class 1-A Notes.  The Class I-A Notes are separated into three tranches: the I-A-1 Notes, the I-A-2 Notes, and the I-A-3 Notes.  It is the I-A-2 Notes and I-A-3 Notes that are at issue in this proceeding.

The I-A-2 and I-A-3 Notes are treated identically under the Indenture as regards their rights to payment in all respects other than in the allocation of Realized Losses.  These Notes are thus subject to different risks of repayment only on account of the way they are allocated Realized Losses.  In November 2010, Wells Fargo was notified that there existed a discrepancy between the Indenture and the ProSupp with respect to how Realized Losses are allocated as between the I-A-2 and the I-A-3 Notes.  (*Id.* ¶ 43.)  In particular, Section 3.38 of the Indenture, entitled "ALLOCATION OF REALIZED LOSSES," provides, as drafted, that Realized Losses are allocated first to the I-A-2 Notes and then to the I-A-3 Notes.  (*Id.* ¶ 32.)  This stands in stark contrast to the Offering Materials used to market the Notes, which uniformly provide that Realized Losses will be allocated first to the more junior I-A-3 Notes and only thereafter to the more senior I-A-2 Notes.  (*Id.* ¶¶ 42-43.)  The allocation of Realized Losses that is memorialized in the Indenture is inconsistent both with the interest rate payable on these two classes of Notes and with the allocation of Realized Losses across all other classes and tranches of Notes in this offering, which uniformly (other than in this one instance) allocate losses in reverse sequential order.

---

[1]   Citations to "Dkt.__" refer to the ECF stamp on documents filed in this case, No. 1:14-cv-02494-AKH (S.D.N.Y.).

**B.      Wells Fargo's Commencement Of The Trust Instruction Proceeding**

To address the impending dispute, on January 17, 2014, Wells Fargo filed this proceeding in the Probate and Mental Health Division of the Minnesota District Court, Fourth Judicial District, County of Hennepin, seeking a trust instruction clarifying the proper priority for allocation of Realized Losses.   The proceeding was subsequently removed to federal court in Minnesota, and venue was thereafter transferred to this Court.   In this proceeding, Wells Fargo "seeks entry of an order (a) reforming Section 3.38 of the Indenture so that losses are allocated first to the Class I-A-3 Notes and then, sequentially, to the Class I-A-2 Notes, in accordance with the disclosure in the [ProSupp] or, in the alternative, (b) directing that any Realized Losses shall be allocated strictly pursuant to the existing terms of the Indenture."  Petition ¶ 5 (Dkt. 1, Ex. A). Wells Fargo has not taken a position as to the proper outcome of this case.

**C.      SCM's Cross-Claims Against Sceptre**

On May 13, 2014, SCM filed its Answer to the Verified Petition and, in this same pleading, asserted counterclaims against Wells Fargo and cross-claims against Sceptre.[2]   First, SCM has asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Sceptre, contending that Sceptre breached its contractual and implicit obligations to SCM by seeking reformation of the Indenture through this proceeding. (Counterclaims & Cross-Claims ¶¶ 105-120.) Second, SCM has asserted a claim for tortious interference with the implied covenant of good faith and fair dealing that exists between SCM and Wells Fargo, again premised on Sceptre's purportedly improper actions in encouraging

---

[2] All proceedings related to SCM's counterclaims against Wells Fargo have been stayed pending resolution of the instant trust instruction proceeding, by agreement and stipulation of the parties.  *See* Stipulation and [Proposed] Order to Bifurcate, dated May 19, 2014.  In this stipulation, the parties also agreed to stay all discovery and proceedings, other than proceedings related to Sceptre's motion to dismiss the cross-claims, related to SCM's cross-claims against Sceptre.

Wells Fargo to bring the instant proceeding. (*Id.* ¶¶ 121-131.)  Lastly, SCM has asserted a claim against Sceptre for unjust enrichment, contending that it will be unjustly enriched to the detriment of SCM by any eventual judgment by this Court mandating reformation of the Indenture.  (*Id.* ¶¶ 101-104.)  These claims are devoid of legal merit, and Sceptre brings this motion requesting that they be dismissed on the pleadings.

## ARGUMENT

## I.   THE LEGAL STANDARD FOR A MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed if it fails to allege "sufficient factual matter" that, if "accepted as true, … 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only if the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  By contrast, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555) (citations omitted).  A complaint that makes allegations that are "merely consistent with" a defendant's liability, or that raise a "sheer possibility" that a defendant is liable fails to state a claim.  *Iqbal*, 556 U.S. at 678.

## II.   THE INDENTURE'S "NO ACTION" CLAUSE BARS SCM'S CROSS-CLAIMS

As a threshold matter, SCM's cross-claims must be dismissed in their entirety because SCM lacks standing to bring them under the "No Action" clause in the Indenture, which provides several prerequisites to suits, such as this, between Noteholders.  It is beyond dispute that SCM has not complied with the "No Action" clause in bringing its cross-claims against Sceptre.  Because SCM failed to allege satisfaction of, and to comply with, the prerequisites to Noteholder

suits set forth in the "No Action" clause, its cross-claims must be dismissed for lack of standing.

*See Emmet & Co., Inc. v. Catholic Health East*, 37 Misc. 3d 854, 861 (Sup. Ct. N.Y. Cnty. Sept. 25, 2012), *aff'd* 114 A.D.3d 605 (1st Dep't 2014).

> The "No Action" clause in the Indenture provides:
>
> No Holder of any Note … shall have *any* right to institute *any* Proceeding, judicial or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder … [unless]
>
> (i) such Holder has previously given written notice to the Indenture Trustee of a continuing Event of Default;
>
> (ii) The Holders of not less than 25% of the aggregate Note Principal Balances of the Notes have made a written request to the Indenture Trustee to institute such Proceeding in respect of such Event of Default in its own name as Indenture Trustee hereunder;
>
> (iii) the Holder or Holders have offered to the Indenture Trustee reasonable indemnity …;
>
> [and various other conditions.]

Indenture § 5.06 (Dkt.34, Exh. B; emphasis added).  "Proceeding," in turn, is broadly defined as "[a]ny suit in equity, action at law or other judicial or administrative proceeding."  Indenture, Annex A at 56.

Under the plain language of the "No Action" clause, each of SCM's cross-claims is barred absent compliance with these requirements (which SCM has neither alleged nor done) because these claims arise "with respect to" the Indenture.  Specifically, the claims for breach of contract and breach of the covenant of good-faith and fair dealing are predicated on duties arising from or relating to the Indenture.  The claim for tortious interference requires a predicate breach of the Indenture (or the attendant implied covenant arising by virtue of the Indenture). And the claim for unjust enrichment seeks to disgorge gains realized only by operation of the Indenture.  Thus, the "No Action" clause applies squarely to preclude SCM's cross-claims here.

New York courts strictly construe "no action" clauses, and have found that failure to comply with "no action" clauses that are materially the same as the instant clause precluded suit. *See, e.g., House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *16 (S.D.N.Y. March 31, 2014) (dismissing declaratory judgment action seeking construction of non-party's rights under Asset Management Agreement for failure to abide by the "no action" clause in an associated Indenture); *Walnut Place LLC v. Countrywide Home Loans, Inc.,* 96 A.D.3d 684, 684 (1st Dep't 2012) (dismissing suit by noteholders in mortgage-backed securitization against third-party contractual obligors of the Issuer for failure to abide by the "no action" clause); *Emmet & Co.*, 37 Misc. 3d at 860-61 (same, noting that: "Barriers to action by individual bondholders serve an important purpose by both preventing expensive lawsuits that do not have the support of a substantial portion of the creditors while also centralizing the prosecution of lawsuits whose benefits should properly accrue to all bondholders." (citations omitted)); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*, 837 F. Supp. 2d 162, 183-184 (S.D.N.Y. 2011) (same: because "[t]he purpose of no-action clauses … is to protect the securitizations—and in turn other certificateholders—from the expense of litigating an action brought by a small group of certificateholders that most investors would consider not to be in their collective economic interest. Such clauses are 'strictly construed' in New York.") (citation omitted). SCM's cross-claims should be similarly barred here.

## III.   EACH OF SCM'S CROSS-CLAIMS MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

Even if SCM has standing to properly assert its cross-claims against Sceptre (which it does not), the cross-claims must nonetheless be dismissed for the separate and independent reason that each of them fails to state a plausible claim against Sceptre.

A.    **SCM's Breach of Contract Claim Fails Because There Is No Contractual Relationship Between SCM and Sceptre**

SCM alleges that Sceptre "breached the Indenture when it sought to reverse the loss allocation priority and disturb and prejudice SCM's rights, and when it sought to obtain priority and preference over SCM."  (Counterclaims & Cross-Claims ¶ 108.)  This claim fails at the outset because SCM does not, and cannot, allege the existence of a valid contract between SCM and Sceptre.  "To make out a breach of contract claim under New York law plaintiffs must show '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 173 (S.D.N.Y. 2009) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F. 3d 168, 177 (2d Cir. 2004)).  "A breach of contract claim 'that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.'"  *Id.* (quoting *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008)).  Specifically, "a breach of contract claim … must provide specific allegations as to the agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue."  *Id.* at 183.

SCM's breach of contract claims fails because SCM does not allege contractual privity with Sceptre.  Indeed, it is wholly unclear from the face of the allegations the precise contractual relationship that this claim is premised on.  It is not clear, for example, whether SCM contends that it has direct contractual privity with Sceptre or whether it is asserting rights as a third-party beneficiary of a contract to which Sceptre is a party—much less when, how and in what manner such contractual privity was purportedly created.  *See Mandarin Trading Ltd. v. Wildenstein¸* 16 N.Y.3d 173, 181-82 (2011) ("a party alleging a breach of contract must demonstrate the existence of a contract reflecting the terms and conditions of their purported agreement."

(quotations and alterations omitted)).  Sceptre is thus left to speculate as to the basis of the contractual duty that it supposedly breached—a deficiency, at the outset, that offends even the most liberal pleading standard.

Further, to the extent that SCM purports to base this claim on a purported breach by Sceptre of the Indenture—the only contract that SCM directly references in its cross-claims—its allegations are woefully inadequate.  SCM cannot allege that Sceptre was a party to the Indenture, which on its face is a contract between and among the Issuer, Wells Fargo as Securities Administrator, and Deutsche Bank as Indenture Trustee.  *See* Indenture at 1.  Thus, the Indenture does not demonstrate any contractual privity between Sceptre and SCM that would support a breach claim.  Moreover, efforts to claim that investors become parties to an enforceable contract simply on account of receiving transactional documents governing their investment have been soundly rejected.  *See Abu Dhabi Commercial Bank*, 651 F. Supp. 2d at 184 ("Plaintiffs [investors in a structured finance vehicle] … fail to plead that the defendants [including the underwriting bank and the indenture trustee] intended to create a binding contract by distributing the [transactional documents].  The First Amended Complaint is also bereft of any facts indicating how plaintiffs accepted these promises—whether acceptance occurred upon purchase of the Rated Notes or some other action .… As a result, plaintiffs' claims based on the existence of these contracts are dismissed.").  As SCM does not allege any other agreement between itself and Sceptre, or even that Sceptre was aware of SCM's existence prior to its joining this proceeding as a Party In Interest, its breach of contract claim fails.[3]

---

[3]   SCM's reference to the "No Action" clause in Section 5.06 of the Indenture does not come close to establishing the necessary contractual privity with Sceptre to support a breach of contract claim.  (Counterclaims & Cross-Claims ¶ 107.)  Further, contrary to SCM's tortured interpretation, the "No Action" clause does not impose (or even purport to impose) contractual duties on Noteholders; instead, it merely limits third-party standing to bring claims related to the

**B.**     **SCM's Implied Covenant Of Good-Faith And Fair Dealing Claim Fails For The Same Reason As Its Breach Of Contract Claim**

The "implied covenant [of good faith and fair dealing] relates only to the performance of obligations under an extant contract …." *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F. 3d 933, 941 (2d Cir. 1998); *see also Hbouss v. Coca-Cola Enterps., Inc.*, 287 Fed. Appx. 903, 905 (2d Cir. 2008) ("[T]he implied covenant of good faith and fair dealing is limited to performance under a contract ….") (quotations omitted).  Under New York law, therefore, "the prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." *Prestige Brands Inc. v. Guardian Drug Co.*, 951 F. Supp. 2d 441, 447 (S.D.N.Y. 2013) (quotation marks omitted).  For the reasons explained in Section III.A, *supra*, no such contractual relationship exists between SCM and Sceptre, nor has SCM adequately pled that it does.  The lack of contractual privity between SCM and Sceptre is fatal to SCM's implied covenant claim, and the claim should be dismissed.  *See Miller v. Wells Fargo Bank, N.A.*, 2014 WL 349723, at *9 n.7 (S.D.N.Y. Jan. 30, 2014) (granting motion to dismiss claims for breach of the covenant of good faith and fair dealing against one defendant because it "was not a party to the [contract sued upon] and, therefore, could not possibly have breached the implied covenant.").

**C.**     **SCM Fails To State A Valid Tortious Interference With Contract Claim, Which Is Barred In Any Event By The Economic Interest Defense**

SCM's tortious interference claim is premised upon an alleged breach by Wells Fargo of the implied covenant of good faith and fair dealing by virtue of instituting this proceeding, which SCM alleges—in a single, conclusory allegation "on information and belief" (Counterclaims & Cross-Claims ¶ 69)—that Sceptre intentionally procured. (*Id.* ¶¶ 121-131.)  To state a claim for

---

Indenture in certain situations by imposing a series of prerequisites to suit.  *See* Section II, *supra*; *see also Emmet & Co.*, 37 Misc. 3d at 860 ("Plaintiffs' failure to comply with [the no action clause's] terms deprives them of standing.").

tortious interference with contract, a plaintiff must allege (1) the existence of a valid contract, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of a breach of that contract without justification, (4) actual breach of the contract, and (5) damages resulting from the breach. *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 594 (2012).

SCM's tortious interference claim fails on multiple grounds. First, SCM has failed to adequately plead Wells Fargo's underlying breach of the implied covenant, which is a necessary element of its tortious interference claim. Second, SCM's single conclusory allegation that Sceptre directed Wells Fargo to seek reformation of the Indenture is not only insufficient to plead intentional procurement of breach without justification, but it is an inaccurate description of the relief that Wells Fargo seeks in this proceeding. Third, even if SCM has adequately alleged a tortious interference claim (which it has not), the claim must still be dismissed because any action by Sceptre was indisputably taken to further its own economic interest, which presents a complete defense to such claim.

### 1.    SCM Failed To Allege Any Breach Of Contract, Which Is A Necessary Prerequisite Of Tortious Interference

The existence of a contractual breach is a prerequisite to a tortious interference with contract claim. *See NBT Bancorp v. Fleet/Nortstar Fin. Grp.*, 87 N.Y.2d 614, 620-21 (1996). To address this prerequisite, SCM alleges that Wells Fargo breached its implied duty of good faith and fair dealing under the Indenture by bringing this trust instruction proceeding. (Counterclaims & Cross-Claims ¶¶ 73-80.) However, SCM's predicate claim against Wells Fargo is meritless because Wells Fargo's right to seek reformation is expressly preserved by the Indenture, and implied duty cannot be read into a contract in a way that is inconsistent with other terms of that contract. *See Dalton v. Educ Testing Serv.*, 87 N.Y.2d 384, 389 (1995) ("The duty of good faith and fair dealing, however, is not without limits, and no obligation can be implied

that would be inconsistent with other terms of the contractual relationship.") (quotation marks omitted); *see also D & L Holdings v. RCG Goldman Co.,* 734 N.Y.S.2d 25, 31 (1st Dep't 2001) ("The covenant of good faith and fair dealing cannot be used to add a new term to a contract, especially to a commercial contract between two sophisticated commercial parties represented by counsel."); *Hildene Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, 2012 WL 3542196, at *7 (S.D.N.Y. Aug. 15, 2012) (the implied covenant of good faith and fair dealing "does not impose obligations beyond those intended and stated in the language of the contract."). As set forth in greater detail in Sceptre's opposition to SCM's motion to dismiss,[4] the Indenture's "governing law" clause expressly, and unambiguously, preserves Wells Fargo's remedies under New York law:

> THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK … AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Indenture § 10.12 (capitalization in original).  One of those remedies is reformation to correct a scrivener's error, which has been recognized by New York courts for more than a century.  *See, e.g., Stonebridge Capital, LLC v. Nomura Int'l, PLC*, 24 Misc. 3d 1218(A), at*4 (Sup. Ct. N.Y. Cnty. 2009) (citing *Born v. Schrenkeisen*, 110 N.Y. 55, 59 (1888)).   Thus, the implied covenant of good faith and fair dealing cannot be held to prohibit the exercise of Wells Fargo's express right under the contract to bring this instructional proceeding. [5]

---

[4]   *See* Memorandum of Law In Opposition To SCM's Motion To Dismiss (Dkt. 28), at 15.

[5]   Indeed, New York law has recognized a cause of action for breach of the implied covenant, notwithstanding an express contractual right, under narrow circumstances, which do not apply here, where the defendant exercised a contractual right "malevolently, for its own gain as part of a purposeful scheme designed to deprive plaintiffs of the benefits of the [agreement] and of the value of their pre-existing holdings ...."  *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.,* 309 A.D.2d 288, 302–03 (1st Dep't 2003) ("recogniz[ing] that there is clearly some tension between, on the one hand, the imposition of a good faith limitation on the exercise of a contract

Since the Indenture expressly permits the exact actions that SCM claims are a breach of an implied covenant, SCM cannot allege the predicate breach of contract on which its tortious interference claim rests.

### 2. SCM Has Not Alleged That Sceptre's Actions Were Intentional and Without Justification

"The standard for intentional procurement of the breach is high: it must be intentional and unjustified." *Wilson v. Dantas*, 2013 WL 92999, at *7 (S.D.N.Y. Jan. 7, 2013) (citing *Oddo Asset Mgmt.*, 19 N.Y.3d at 595). SCM's allegations utterly fail to meet this standard. In fact, only a single allegation, pled sparsely "on information and belief," addresses Sceptre's purported procurement of breach: that "Sceptre contacted Wells Fargo regarding the Indenture loss priority and, on information and belief, requested, directed, or instructed that Wells Fargo pursue reversal of the Indenture loss priority ...." (Counterclaims & Cross-Claims ¶ 69; *id.* ¶ 125 ("Sceptre sought to have Wells Fargo breach the Indenture, including Wells Fargo's implied duty of good faith and fair dealing, when, upon information and belief, it directed or encouraged Wells Fargo to seek reformation.").) This conclusory allegation is devoid of any facts that permit an inference of intentional and unjustified conduct sufficient to state a claim. Indeed, none of SCM's allegations raise a plausible inference that, to the extent Sceptre advocated for a particular allocation of Realized Losses among Class I-A Notes, such actions would not patently have been within its rights as a Noteholder seeking to protect its position, just as SCM has done and is doing in connection with these proceedings. For this reason as well, SCM's tortious interference claim must be dismissed.

---

right and, on the other, the avoidance of using the implied covenant of good faith to create new duties that negate explicit rights under a contract."). The cross-claims are entirely devoid of any allegation that Wells Fargo sought to improperly benefit from the institution of this proceeding, or otherwise acted malevolently in bringing it.

### 3.      Any Actions Sceptre May Have Taken Were Out Of Economic Interest, And SCM Has Not Plausibly Alleged Actual Malice

Even if SCM's allegations were sufficient to state a tortious interference claim (which they are not), this claim is barred in any event by the economic interest defense. "[W]hen a defendant in a tortious interference with contract claim shows that it acted out of economic interest, the plaintiff must establish 'either malice on the one hand, or fraudulent or illegal means on the other.'" *Drummond v. Morgan Stanley & Co.*, 1996 WL 631723, at *1 (S.D.N.Y. Oct. 31, 1996) (quoting *Foster v. Churchill*, 642 N.Y.S. 2d 583, 587 (1996)). In particular, the "economic self-interest" defense is available to an investor who "act[s] to protect its own legal or financial stake in the breaching party's business." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (2007); *see also Felsen v. Sol Café Mfg. Corp.*, 24 N.Y.2d 682, 687 (1969) ("A person who has a financial interest, as a stockholder, in the business of another is privileged to interfere with a contract which that other person or business had with a third person if his purpose is to protect his own interest and if he does not employ improper means."). In such circumstances, mere "[k]nowledge that plaintiff would be hurt is not sufficient to show that [the defendant] acted maliciously or used fraudulent or illegal means or, indeed, that it deliberately intended to interfere with plaintiff's contract ...." *Drummond*, 1996 WL 631723, at *1.

This doctrine applies squarely here, and provides an additional reason warranting dismissal of SCM's tortious interference claim. Sceptre is protected by the economic interest defense because it indisputably holds an interest in I-A-2 Notes, and SCM cannot credibly contend that Sceptre's alleged actions in causing a breach were motivated by anything other than Sceptre's desire to protect its investment. Further, SCM's cross-claims are utterly devoid of any allegation from which this Court could plausibly infer actual malice. Indeed, SCM's only

14

allegation in respect of Sceptre's state of mind when it supposedly caused a breach of the Indenture is that "Sceptre had knowledge of the existence of the Indenture, the fact that Wells Fargo is a party to the Indenture, and the fact that other Noteholders such as SCM were entitled to the rights, benefits and protections as set forth in the Indenture …" (Counterclaims & Cross-Claims ¶ 125.)  This allegation falls well short of the pleading requirement for actual malice.  *See Drummond*, 1996 WL 631723, at *1 (dismissing tortious interference claim because "[e]ven assuming [that defendant knew plaintiff would be hurt by its decision to cancel a transaction with plaintiff's broker dealer], without more, [defendant's] knowledge that plaintiff would be hurt is not sufficient to show it acted maliciously …").  Since any actions that Sceptre took to advocate for its interpretation of the Realized Loss provision are justified by the economic interest defense, SCM's tortious interference claim must be dismissed.

### D.   SCM Has Failed To State A Claim In Equity For Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'"  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y. 3d 173, 182 (2011) (quotations omitted).  The "essential inquiry" in an unjust enrichment claim is the third element.  *Id.*  SCM's unjust enrichment claim against Sceptre is the archetype of sub-standard pleading.  It consists, in its entirety, of two conclusory allegations that do no more than provide a rote recitation of the elements of the claim.  To wit, SCM alleges simply that "[r]eformation of the loss allocation priority in the Indenture will unjustly enrich Sceptre at the expense of SCM" and that "[e]quity and good conscience militate against permitting Sceptre to recover at the expense of SCM."  (Counterclaims & Cross-Claims ¶¶ 102-103.)  For this reason alone, SCM's unjust enrichment claim should be dismissed.  *See Jurgensen v. Felix Storch*, 2012 WL 2354247, at *6 (S.D.N.Y. June 14, 2012) ("threadbare

recitals of the elements of a cause of action" are inadequate to survive a motion to dismiss) (internal quotation marks omitted).

Moreover, even if pled with requisite detail, SCM's unjust enrichment claim should be dismissed as failing to allege any plausible claim that Sceptre has received any recovery that is unjust.[6]  The "essential inquiry" in an unjust enrichment claim lies in "whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Paramount Film Distrib. Corp. v. State of N.Y.*, 30 N.Y.2d 415, 421 (1972), *cert. denied* 414 U.S. 829 (1973).  "Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position of the defendant, and whether the defendant's conduct was tortious or fraudulent."  *Clark v. Darby*, 300 A.D.2d 732, 732 (3d Dep't 2002) (quoting *Paramount Film*, 30 N.Y.2d at 421).  Here, SCM's assertion that Sceptre would be unjustly enriched by this Court's judgment to reform the Indenture to accurately reflect its original intent is nonsensical in that SCM is in effect seeking to have this Court declare that its own judgment on reformation produces an "unjust" result.  Unsurprisingly, there is no precedent for such a claim.  Indeed, such a result would open every prevailing party in a lawsuit to potential civil liability *to the losing party* by simple virtue of having won its day in court, and thus nullify the effect of the judicial process.  Nor can SCM point to an alternative theory of injustice to save its claim.  First, SCM cannot claim that any allocation of Realized Losses in this matter will be the

---

[6]  In addition, SCM's unjust enrichment claim is not ripe.  As SCM's own pleading concedes, any purported unjust enrichment will occur only upon there being a reformation of the Indenture:  "[r]eformation of the loss allocation priority in the Indenture will unjustly enrich Sceptre at the expense of SCM."  (Counterclaims & Cross-Claims ¶ 102.)  As no such reformation has occurred and no other party has received amounts to which SCM was rightfully entitled, its claim is (at best) premature.  *See, e.g., Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259-60 (S.D.N.Y. 2012).

result of a mistake of fact or law, since the Court will resolve those issues at trial.  Second, SCM has not alleged (nor could it) that Sceptre has engaged in any fraudulent or illegal conduct.

Furthermore, SCM's own pleadings acknowledge that it acquired its Class I-A-3 Notes in 2012 (Counterclaims & Cross-Claims ¶ 49)—years after information regarding the discrepancy between the provisions of the Indenture and the ProSupp was widely known to investors (Counterclaims & Cross-Claims ¶¶ 43-45, 47).  This means that SCM made its investment in the Class I-A-3 Notes with knowledge as to the uncertainty regarding how Realized Losses would ultimately be allocated to the notes in which it invested.  Where an investor makes an investment with knowledge of uncertainty, no principle of equity or good conscience entitles it to recompense when it suffers losses on account of that uncertainty ultimately being resolved to its detriment.  *See, e.g.,  Jane St. Capital, LLC v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 972 N.Y.S.2d 143 (Sup. Ct. N.Y. Cnty. 2013) ("petitioner's investment in short options constituted a calculated risk or gamble, which it presumably took with knowledge that the liquidation period could be changed thereafter. That the gamble did not pay off does not warrant recoupment of its losses from the other party absent a showing that equity and good conscience require restitution from the other party."); *Dragon Investment Co. II LLC v Shanahan,* 49 A.D.3d 403 (1st Dep't 2008) (unjust enrichment "does not lie to relieve party of consequences of [the] party's own failure to . . . exercise caution with respect to business transaction.") (internal quotation marks omitted).

For these reasons, SCM's unjust enrichment claim should be dismissed as well.

## CONCLUSION

For the foregoing reasons, Sceptre respectfully requests that the Court dismiss SCM's cross-claims against Sceptre.

DATED:   New York, New York                   Respectfully submitted,
         May 23, 2014
                                              QUINN EMANUEL URQUHART &
                                                  SULLIVAN, LLP


                                              By: _____
                                                  Jonathan E. Pickhardt
                                                  jonpickhardt@quinnemanuel.com
                                                  Maaren A. Shah
                                                  maarenshah@quinnemanuel.com
                                                  Blair Adams
                                                  blairadams@quinnemanuel.com

                                                  51 Madison Avenue, 22nd Floor
                                                  New York, New York 10010
                                                  (212) 849-7000

                                                  *Attorneys for Party-In-Interest*
                                                  *Sceptre, LLC*