IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Trusteeship Created by
American Home Mortgage Investment Trust
2005-2 relating to the issuance of Mortgage-
Backed Notes pursuant to an Indenture dated as
of October 1, 2007

Case No. 1:14-cv-02494-AKH
Hon. Alvin K. Hellerstein

ECF Case

**MEMORANDUM OF LAW OF WELLS FARGO BANK, N.A., SOLELY
IN ITS CAPACITY AS SECURITIES ADMINISTRATOR, IN OPPOSITION
TO SEMPER CAPITAL MANAGEMENT, L.P.'S MOTION FOR
<u>JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT</u>**

ALSTON & BIRD LLP

Michael E. Johnson
Carolyn R. O'Leary
90 Park Avenue
New York, New York 10016-1387
Tel. 212-210-9400

*Attorneys for Petitioner Wells Fargo Bank,
N.A., solely in its capacity as Securities
Administrator*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................................ii

PRELIMINARY STATEMENT .......................................................................................1

FACTUAL BACKGROUND ............................................................................................3

    I.   The Transaction and the Dispute as to Allocation of Realized Losses .....................3

    II.  Minnesota Trust Instruction Proceeding ..................................................................6

    III. Procedural History ...................................................................................................7

ARGUMENT .....................................................................................................................8

    I.   Legal Standard ..........................................................................................................8

    II.  The Statue of Limitations Does Not Bar the Securities Administrator's
        Request for Relief ......................................................................................................9

        A.  Application of the Statute of Limitations to Bar this Action is Inconsistent
            With the Purpose of Trust Instruction Statutes ..................................................10

        B.  The Securities Administrator, Like an Interpleader Plaintiff, Is Entitled to
            Seek Direction from The Court Because It Faces Competing Claims .................13

CONCLUSION ................................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page(s)**

*6247 Atlas Corp. v. Marine Ins. Co., Ltd.*,
    155 F.R.D. 454 (S.D.N.Y. 1994) ........................................................14

*A&E Television Networks, LLC v. Pivot Point Entertainment, LLC*,
    No. 10 Civ. 9422 (PGG), 2011 WL 182083 (S.D.N.Y. Jan. 18, 2011) ...................................14

*Application of Greene*,
    88 A.D.2d 547, 451 N.Y.S.2d 741 (1st Dep't 1982) ..............................11

*Ashton v. Paul*,
    918 F.2d 1065 (2d Cir. 1990).....................................................14

*Astrazeneca AB v. Apotex Corp.*,
    01 CIV. 9351, 2010 WL 2541180 (S.D.N.Y. June 9, 2010)......................................9

*Bailey v. Pataki*,
    08 CIV. 8563 JSR, 2010 WL 234995 (S.D.N.Y. Jan. 19, 2010) ...........................9

*Blackrock Fin. Mgmt. Inc. v. Segregated Account of AMBAC Assur. Corp.*,
    673 F.3d 169 (2d Cir. 2012).......................................................11

*Fidelity Brokerage Servs., LLC v. Bank of China*,
    192 F. Supp. 2d 173 (S.D.N.Y. 2002)..............................................14

*Ford Motor Company-UAW, Retirement Plan v. Wheatley*,
    No. 1:09 CV 477, 2010 WL 2802758 (N.D. Ohio June 2, 2010),
    *as adopted in* 2010 WL 2802754 (N.D. Ohio July 15, 2010)...........................14, 15

*In re A Petition for Instructions to Construe Basic Resolution 876 of the*
    *Port Authority of the City of St. Paul*,
    772 N.W.2d 488 (Minn. 2009)....................................................10

*In re Indenture of Trust, dated October 1, 1985, between Minneapolis Community Dev.*
    *Agency & Nat'l City Bank of Minneapolis, as Trustee, Relating to the $10,000,000*
    *Commercial Dev. Revenue Bonds, Series 1985 (Crown Mill Project)*,
    No. A03-1856, 2004 WL 1662174 (Minn. Ct. App. July 27, 2004)......................11

*In re Salkin*,
    9 Misc. 2d 708, 170 N.Y.S.2d 191 (Sup. Ct. N.Y. County 1957),
    *aff'd*, 6 A.D.2d 1011, 178 N.Y.S.2d 613 (1st Dep't 1958)..............................11, 12

*In re Scarborough Prop. Corp.*,
    25 N.Y.2d 553, 307 N.Y.S.2d 641 (1969) ............................................12

**Cases**                                                                                              **Page(s)**

*In re Strawberry*,
   464 B.R. 443 (Bankr. N.D. Fla. 2012)................................................................15

*Irving Trust Co. v. Walton*,
   274 A.D. 119, 79 N.Y.S.2d 858 (1st Dep't 1948) ..............................................12

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir. 1986).......................................................................................9

*Mosser v. Darrow*,
   341 U.S. 267 (1951)..............................................................................................11

*New York Life Ins. Co. v. Conn. Dev. Auth.*,
   700 F.2d 91 (2d Cir. 1983)....................................................................................13

*Phillips v. Reed Grp., Ltd.*,
   07 CIV. 3417 RO DF, 2013 WL 3340293 (S.D.N.Y. July 1, 2013)........................9

*Prudential Ins. Co. of America v. Glasgow*,
   208 F.2d 908 (2d Cir. 1953)............................................................................15, 16

*State Farm Fire & Casualty Co. v. Tashire*,
   386 U.S. 523 (1967)..............................................................................................14

*State Farm Life Ins. Co. v. Cai*,
   No. 09-CV-00396-LHK, 2011 WL 864938 (N.D. Cal. Mar. 11, 2011) .................15

*Washington Elec. Co-op, Inc. v. Paterson, Walke & Pratt, P.C.*,
   985 F.2d 677 (2d Cir. 1993)..................................................................................14

**Statutes and Rules**

28 U.S.C. § 1335.....................................................................................................14

N.Y. C.P.L.R. Art. 77 .........................................................................................11, 12

N.Y. C.P.L.R. 7701..................................................................................................11

Minn. Stat. § 501B....................................................................................................7

Minn. Stat. § 501B.16 *et seq.* (the "Minn. TIP Statute")......................................*passim*

Fed. R. Civ. P. 12(b)(6)..........................................................................................2, 9

Fed. R. Civ. P. 12(c) .............................................................................................8, 9

Fed. R. Civ. P. 56(c) .................................................................................................9

**<u>Other Authorities</u>**                                                                                   **<u>Page(s)</u>**

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (2013) .............9

Restatement (Third) of Trusts § 71 (2007) ...................................................................................12

Petitioner Wells Fargo Bank, N.A. ("Wells Fargo"), solely in its capacity as Securities Administrator and not in its individual capacity (Wells Fargo in that capacity, the "Securities Administrator"), by and through its counsel, respectfully submits this Memorandum of Law, together with the accompanying Declaration of Michael E. Johnson (the "Johnson Decl.") and Rule 56.1 Counter-Statement of Facts (the "Rule 56.1 Counter-Statement"), in opposition to party in interest Semper Capital Management, L.P.'s ("Semper") Motion for Judgment on the Pleadings or Summary Judgment (the "Semper Motion").[1]

## PRELIMINARY STATEMENT

This action pertains to a residential mortgage loan securitization transaction. Certain mortgage loans were deposited in the American Home Mortgage Investment Trust 2005-2, the proceeds of which are used to pay principal and interest amounts to investors in notes issued by the trust. Wells Fargo serves as Securities Administrator, and its responsibilities include making payment of principal of and interest on the Notes[2] to the noteholders, including interested parties Semper and Sceptre, LLC ("Sceptre"), pursuant to the terms of the Indenture.

---

[1] As filed, the Semper Motion also sought, in the alternative, to adjourn the trial and extend the deadlines for pre-trial submissions and discovery. Pursuant to the Court's direction, on June 2, 2014, the parties submitted a joint letter outlining their respective positions on that aspect of Semper's motion. (Dkt. No. 64.) On June 4, 2014, the Court granted in part Semper's motion to adjourn the trial and extend the deadlines. (Dkt. No. 69.) The Securities Administrator therefore does not address the arguments raised in support of Semper's motion to adjourn.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to them in the Indenture, dated as of June 22, 2005, by and among American Home Mortgage Investment 2005-2, as Issuer, the Securities Administrator, and Deutsche Bank National Trust Company, as Indenture Trustee, as amended by the First Supplemental Indenture, dated as of August 31, 2009, by and among the Issuer, the Securities Administrator and the Indenture Trustee (the "Indenture"). A copy of the Indenture, without the First Supplemental Indenture, was attached as Exhibit 1 to the Verified Petition of Wells Fargo, as Interested Person, for Instructions in the Administration of a Trust Pursuant to Minn. Stat. § 501B.16, filed January 17, 2014 (the "Verified Petition").

The Securities Administrator, faced with an apparent conflict between the terms of the Indenture and the Prosupp (as defined below) concerning the sequence for allocation of Realized Losses to two Classes of Notes, filed a Petition in Minnesota District Court pursuant to Minnesota state law, requesting an instruction as to the proper sequence for allocating Realized Losses.  The core relief sought in the Securities Administrator's Petition is an order either (a) reforming the Indenture to conform to the Realized Loss allocation sequence described in the Prosupp or (b) requiring the Securities Administrator to allocate Realized Losses pursuant to the literal terms of the Indenture.  The Securities Administrator holds no Notes and has no pecuniary interest in the outcome of this matter; instead, it simply seeks a judicial order clarifying the respective rights of the two Classes of affected Notes so that it can perform its duties free from uncertainty and risk of liability.  It therefore has taken no position as to the appropriate resolution of the case (*i.e.*, whether the Court should order (a) or (b), above).  In response to Semper's Motion to Dismiss pursuant to Rule 12(b)(6) (Dkt. No. 18), the Court has already held that the Securities Administrator properly stated a cause of action under the relevant statutory scheme for trust instruction, Minn. Stat. § 501B.16 *et seq.*  (the "Minn. TIP Statute").  (Dkt. No. 37.)

By its Motion for Summary Judgment, Semper once again seeks relief that would effectively preclude the Securities Administrator from obtaining judicial guidance, this time on the basis of the statute of limitations applicable to claims seeking reformation of contracts.  The relief Semper seeks must be denied because it is inconsistent with the purpose of the Minn. TIP Statute and similar statutory schemes providing for judicial interpretation of trust instruments. These statutes create an equitable remedy for trustees and similarly situated parties who might require judicial guidance years, if not decades, after execution of trust instruments, and application of the statute of limitations in the manner in which Semper suggests would

dramatically curtail their utility.  Moreover, with the appearance of two interested investors that have taken adverse positions in respect of the loss allocation issue, this action now bears a striking resemblance to an interpleader action, and cases decided in the interpleader context make clear that the statute of limitations does not operate to foreclose resolution of a dispute presented by a disinterested plaintiff.  Semper's Motion should therefore be denied.

## FACTUAL BACKGROUND

### I.       The Transaction and the Dispute as to Allocation of Realized Losses

The Securities Administrator serves in that capacity pursuant to the Indenture.  *See* Semper's Rule 56.1 Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Semper's Rule 56.1 Statement") ¶ 3.  Also pursuant to the terms of the Indenture, the Issuer, a Delaware statutory trust, granted to the Indenture Trustee, as trustee for the benefit of the Holders of the Notes and the Insurer, all of the Issuer's right, title and interest in and to the Trust Estate (as more fully described in the Indenture).  *See* Verified Petition Ex. 1 at § 2.03.  Such grant was made in trust to secure the payment of principal of and interest on, and any other amounts owing in respect of, the Notes.  *See* Verified Petition ¶ 7; Semper's Answer to the Verified Petition and Counterclaims and Cross-Claims (the "Semper Answer") ¶ 7; Sceptre's Answer and Affirmative Claim to the *Res* (the "Sceptre Answer") ¶ 7.

The Issuer issued Mortgage-Backed Notes ("Notes") in the aggregate Initial Note Principal Balance amount of $5,778,151,000.  *See id.*  The Notes were issued in a number of classes, each having different terms, including different rates of interest and different priorities in right of payment of interest and principal and different priorities in the allocation of Realized Losses. *See* Verified Petition ¶ 8; Semper Answer ¶ 8; Sceptre Answer ¶ 8.  Pursuant to the terms of the Indenture, the Mortgage Loans underlying the Notes are organized into Group I, Group II-

3

C, Group II-NC, Group III, Group IV, Group V, and Group VI Mortgage Loans.  *See* Verified Petition ¶ 9; Semper Answer ¶ 9; Sceptre Answer ¶ 9.  At issue in this proceeding are two of the Classes of Notes associated with the Group I Loans, Classes I-A-2 and I-A-3.  *See*  Verified Petition ¶ 14; Semper Answer ¶ 14; Sceptre Answer ¶ 14.

The terms of the Notes and Indenture were described in the Prospectus Supplement dated June 20, 2005, to the Prospectus dated March 22, 2005 (the "Prosupp"), the offering document made available to prospective investors.[3]  *See* Verified Petition ¶ 10; Semper Answer ¶ 10; Sceptre Answer ¶ 10; Semper's Rule 56.1 Statement ¶ 2.

The Prosupp provides that: "Any Realized Losses on the mortgage loans in Loan Group I . . . will be allocated or covered on any payment date . . . *to the Class I-A-3 Notes and Class I-A-2 Notes, in that order*, in reduction of the Note Principal Balance therefor, until reduced to zero . . . ."  *See* Verified Petition Ex. 2 at S79-80 (emphasis added.).

The Indenture defines a Realized Loss as, "(i) a Deficient Valuation, or (ii) as to any Liquidated Mortgage Loan, the unpaid principal balance thereof plus accrued and unpaid interest."[4]  *See* Verified Petition ¶ 11; Semper Answer ¶ 11; Sceptre Answer ¶ 11.  When a Realized Loss is applied to a Class of Notes, the Note Principal Balance is reduced, which ultimately reduces the payments received by Holders in respect of the Notes on a Payment Dates.[5]  *See* Verified Petition Ex. 1 at §§ 3.05, 3.38

---

[3] The Prosupp was attached as Exhibit 2 to the Verified Petition.

[4] The Prosupp defines Realized Loss as "[a]ny loss on a mortgage loan attributable to the mortgagor's failure to make any payment of principal or interest as required under the mortgage note."

[5] Payment Date is defined in the Indenture as "[t]he 25th day of each month, or if such day is not a Business Day, then the next Business Day, commencing in July 2005."

However, the Indenture reverses the order for the allocation of Realized Losses.  The mechanics for allocation of Realized Losses among the Classes of Notes are provided by Section 3.38 of the Indenture, which states in relevant part that "[a]ny Realized Losses on the Group I Loans . . . will be allocated on any Payment Date . . . *to the Class I-A-2 Notes and Class I-A-3 Notes, in that order*, in reduction of the Note Principal Balance thereof ."  *See* Verified Petition Ex. 1 at § 3.38 (emphasis added); *see also* Semper Rule 56.1 Statement ¶ 6.  In other words, Section 3.38 provides that Realized Losses are to be allocated to the Class I-A-2 Notes before allocation to the Class I-A-3 Notes.  *See* Semper Rule 56.1 Statement ¶ 7.  Thus, the terms of the Indenture and the Prosupp are inconsistent as to the sequence for allocation of Realized Losses for Group I Loans between Class I-A-3 Notes and Class I-A-2 Notes.  *See* Verified Petition ¶ 14; Sceptre Answer ¶ 14; Semper Answer ¶ 14; *see also* Semper Rule 56.1 Statement ¶ 9.

In November 2010, a Class I-A-2 Holder wrote to the Securities Administrator regarding the discrepancy between the Indenture and the Prosupp, stating that the Realized Loss allocation sequence in the Prosupp was correct, that the sequence contained in the Indenture was a drafting error, and that allocation in accordance with the Indenture would have the effect of demoting the Class I-A-2 Notes from Senior Mezzanine to Junior Mezzanine.  *See* Semper Rule 56.1 Statement ¶ 8.  In response, the Securities Administrator acknowledged the conflict between the documents and stated that it would allocate Realized Losses in accordance with the Indenture, absent an amendment to the Indenture.  *See* Johnson Decl. Ex. 9 at 68:19-70:7.  Subsequently, several other Holders contacted the Securities Administrator regarding the discrepancy.  *See* Semper Rule 56.1 Statement ¶ 11.

On May 10, 2013, the Securities Administrator sent Class I-A-2 and Class I-A-3 Holders an Informational Notice and Request for Consideration of Proposed Second Supplemental

Indenture (the "Consent Request").[6]  *See* Verified Petition ¶ 19; Sceptre Answer ¶ 19; Semper Answer ¶ 19.   In the Consent Request, the Securities Administrator notified Holders of the conflict between Section 3.38 of the Indenture and the Prosupp.  *See* Verified Petition ¶ 20; Sceptre Answer ¶ 20; Semper Answer ¶ 20. The Securities Administrator further notified Holders that an amendment to the Indenture to conform Section 3.38 to the sequence in the Prosupp would require the consent of 100% of Class I-A-2 and Class I-A-3 Holders.  *See id;* Verified Petition Ex. 3.  The Securities Administrator requested that Holders provide consent on or before July 10, 2013.  *See id.*   In the Consent Request, the Securities Administrator also expressly reserved its rights to take further action to resolve the inconsistency between the Indenture and the Prosupp, including legal action.  *See id.*  The Securities Administrator did not receive consent from 100% of the Class I-A-2 and Class I-A-3 Holders and, therefore, the Indenture was not amended.  *See*  Verified Petition Ex. 4.

The Securities Administrator has not yet had to allocate Realized Losses to the Class I-A-2 or Class I-A-3 Notes because, to date, all Realized Losses have been allocated (pursuant to the terms of the Indenture) to other, more subordinate Classes of Notes.  *See*  Rule 56.1 Counter-Statement ¶ 15.  However, it anticipates that very shortly, allocation of Realized Losses to one or the other Class will be required.  *See*  Rule 56.1 Counter-Statement ¶ 16.

## II.   Minnesota Trust Instruction Proceeding

Recognizing that it would soon have to allocate Realized Losses to the Notes in the Classes affected by the conflict, the Securities Administrator filed the Verified Petition in the Minnesota District Court, Fourth Judicial District, seeking an order from that court pursuant to the Minn. TIP Statute on January 17, 2014.  (Dkt. No. 1.)  The Minn. TIP Statute provides a

---

[6] The Consent Request was attached as Exhibit 3 to the Verified Petition.

means for a trustee or interested party in a trust to petition the district court for an order, *inter alia*, "to construe, interpret, or reform the terms of a trust, or authorize a deviation from the terms of a trust." Minn. Stat. § 501B.16(4).  It also permits a trustee or interested party to petition the court "to instruct the trustee, beneficiaries, and any other interested parties in any matter relating to the administration of the trust and the discharge of the trustee's duties." Minn. Stat. § 501B.16(23).  Furthermore, a trustee or interested party may commence a proceeding under the Minn. TIP Statute even if trust beneficiaries have not raised conflicting positions on the issue. The Minn. TIP Statute requires that the court represent all parties-in-interest who are unascertained or not in being, and provides that a court's ruling will bind the trust estate and all beneficiaries thereto. *See* Minn. Stat. §§ 501B.19, 501B.21.

The Minn. TIP Statute prescribes requirements for the petitioner to provide notice to all beneficiaries of the trust.  *See* Minn. Stat. § 501B.18.  The Securities Administrator has  provided notice in accordance with the Minn. TIP Statute's requirements.   *See*  Rule 56.1 Counter-Statement ¶ 14.

### III.    Procedural History

On February 18, 2014, Sceptre, a Holder of Class I-A-2 Notes, appeared as a party-in-interest, and removed the Minnesota state court action to the United States District Court for the District of Minnesota.  (Dkt. No. 1.)  Subsequently, Semper, a Holder of Class I-A-3 Notes, appeared as a party in interest in the Minnesota federal action.  (Dkt. No. 11.)  On April 2, 2014, Semper filed a motion to dismiss the Verified Petition.  (Dkt. No. 18.)  On or about April 3, 2014, the parties executed and filed a stipulation to transfer the action to the United States District Court for the Southern District of New York, and the action was transferred.  (Dkt. Nos. 22, 25-26.)  On May 2, 2014, Sceptre brought an application for an Order to Show Cause for

Judgment on the Pleadings, or in the Alternative, Application for Preliminary Injunction.  (Dkt. No. 33.)  On May 2, 2014, the Court, with the parties' consent, converted Sceptre's Application for Judgment on the Pleadings into a Motion for Summary Judgment.  (Dkt. No. 32.)  On May 5, 2014, the Court held a hearing on Semper's Motion to Dismiss and Sceptre's Application in the Alternative for Preliminary Injunction.  (Dkt. No. 37.)  At the May 5 hearing, Sceptre withdrew its Application for Preliminary Injunction.  (Dkt. No. 37.)  Also at the May 5 hearing, the Court denied Semper's Motion to Dismiss and terminated and converted Sceptre's Motion for Summary Judgment into a Rule 52 proceeding and set June 9 and 10, 2014 as dates for a trial on the merits of the Securities Administrator's claim for relief.  (Dkt. No. 37.)

On May 13, 2014, Semper filed its Answer, including Counterclaims and Cross-Claims. (Dkt. No. 46.)  Also on May 13, 2014, Sceptre filed its Answer, including its Affirmative Claim to the *Res*.  (Dkt. No. 47.)  On May 27, 2014, the Court entered a Stipulation and Order to Bifurcate Semper's counterclaims and cross-claims from the trial on the claim set forth in the Verified Petition.  (Dkt. No. 56.)  On May 23, 2014, Sceptre filed a motion to dismiss Semper's cross-claims against it.  (Dkt. No. 54.)  On May 28, 2014, Semper filed its Motion for Judgment on the Pleadings or Summary Judgment or, in the Alternative, to Adjourn the Trial and Extend Deadlines. (Dkt. No. 58.)  On June 4, 2014, the Court granted in part Semper's request to adjourn the trial, scheduling trial for June 30 through July 2, 2014. (Dkt. No. 69.)

## ARGUMENT

### I.    Legal Standard

Semper has moved for judgment on the pleadings or, in the alternative, summary judgment.  Under Fed. R. Civ. P. 12(c), "a party is entitled to judgment on the pleadings only if it has established that no material issue of facts remains to be resolved and that [it] is entitled to

judgment as a matter of law." *Bailey v. Pataki*, 08 CIV. 8563 JSR, 2010 WL 234995, at *1 (S.D.N.Y. Jan. 19, 2010) (internal citations and quotation omitted); *see also*, Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (2013) ("Although the motion [for judgment on the pleadings] may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further . . . hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant full and fair hearing on the merits of his or her claim or defense.").  A court applies the same standard in evaluating a Rule 12(c) motion as is applied to a Rule 12(b)(6) motion to dismiss.  *Astrazeneca AB v. Apotex Corp.*, 01 CIV. 9351, 2010 WL 2541180 (S.D.N.Y. June 9, 2010).  Therefore, on a 12(c) motion, the court should "accept all factual allegations in the [non-movant's pleading] as true, while also drawing all reasonable inferences in favor of the nonmoving party."  *Phillips v. Reed Grp., Ltd.*, 07 CIV. 3417 RO DF, 2013 WL 3340293, at *6 (S.D.N.Y. July 1, 2013).

Summary judgment is only permitted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  On summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

## II.     The Statute of Limitations Does Not Bar the Securities Administrator's Request for Relief

Semper's motion for judgment on the pleadings or for summary judgment is premised on a mischaracterization of the relief the Securities Administrator seeks. The Securities

9

Administrator has not asserted a claim for reformation of the Indenture, nor has it taken any position at all as to how the court should resolve the discrepancy between the Indenture and the Prosupp.  As set forth in the Verified Petition, the Securities Administrator commenced the trust instruction action because it is confronted with an inconsistency between the Indenture and the Prosupp with respect to the allocation of Realized Losses to Holders.  *See* Verified Petition ¶ 3. Instead of advocating for a specific resolution of the discrepancy, the Securities Administrator requested relief in the alternative, asking that the Court either enter an order reforming Section 3.38 of the Indenture, so that Realized Losses would be allocated in accordance with the terms of the Prosupp, or directing that any Realized Losses shall be allocated strictly pursuant to the existing terms of the Indenture.  *See* Verified Petition ¶ 5.  Semper's Motion must be dismissed because it is based on the inaccurate premise that the Securities Administrator has advocated for one form of relief, reformation of the Indenture, which is supposedly barred by the statute of limitations.   The action that the Securities Administrator actually filed, seeking a judicial instruction as to the proper manner in which to allocate Realized Losses, is not barred by the statute of limitations.

### A.  Application of the Statute of Limitations to Bar this Action is Inconsistent With the Purpose of Trust Instruction Statutes

The Securities Administrator commenced an action in Minnesota District Court, Fourth Judicial District pursuant to the Minn. TIP Statute, which broadly permits a trustee or interested party to petition the court for an order, *inter alia*, to "construe, interpret or reform the terms of a trust, or authorize a deviation from the terms of a trust," or to "instruct the trustee, beneficiaries, and any other interested parties in any matter relating to the administration of the trust."  Minn. Stat. §§ 501B.16(4), (23); *see also In re A Petition for Instructions to Construe Basic Resolution 876 of the Port Authority of the City of St. Paul*, 772 N.W.2d 488, 491-92 (Minn. 2009)

(discussing the history and intent of the Minn. TIP Statute); *In re Indenture of Trust, dated October 1, 1985, between Minneapolis Community Dev. Agency & Nat'l City Bank of Minneapolis, as Trustee, Relating to the $10,000,000 Commercial Dev. Revenue Bonds, Series 1985 (Crown Mill Project)*, No. A03-1856, 2004 WL 1662174, at *4 (Minn. Ct. App. July 27, 2004) (same).  The Minn. TIP Statute is not unique; the laws of other states provide for similar trust instruction proceedings.  For example, if the Securities Administrator had commenced this action in New York, it might have requested the same relief pursuant to New York C.P.L.R. Article 77, which "authorizes a special proceeding to determine a matter relating to any express trust. . . [and such proceedings] are used by trustees to obtain instruction as to whether a future course of conduct is proper, and by trustees (and beneficiaries) to obtain interpretations of the meaning of trust documents."  *Blackrock Fin. Mgmt. Inc. v. Segregated Account of AMBAC Assur. Corp.*, 673 F.3d 169, 174 (2d Cir. 2012) (internal quotations and citations omitted); *see also Application of Greene*, 88 A.D.2d 547, 548, 451 N.Y.S.2d 741, 743 (1st Dep't 1982) (holding that CPLR 7701 "should be broadly construed to cover any matter of interest to trustees, beneficiaries or adverse claimants concerning the trust").  Trust instruction statutes exist because there is a benefit in providing a forum and procedure for trustees and other interested parties in a trust to seek the court's instruction as to the administration of the trust and interpretation of trust documents.  *See Mosser v. Darrow*, 341 U.S. 267, 274 (1951) ("The practice is well established by which trustees seek instructions from the court, given upon notice to . . . interesteed parties, as to matter which involve difficult questions of judgment."); *In re Salkin*, 9 Misc. 2d 708, 710, 170 N.Y.S.2d 191, 194 (Sup. Ct. N.Y. County 1957) (noting that "sound policy" has always encouraged the practice of a trustee seeking the court's review and approval of his action in furtherance of a trust "so that courts may keep an ever watchful eye upon the work of trustees"),

*aff'd*, 6 A.D.2d 1011, 178 N.Y.S.2d 613 (1st Dep't 1958); Restatement (Third) of Trusts § 71 (2007) ("In circumstances of reasonable uncertainty, whether of law or of terms of the trust, the trustee or a beneficiary is entitled to instructions of the court to clarify the trustee's powers or duties or other matters involving the meaning and effect of the trust provisions.").

Application of the statute of limitations to bar the relief sought by the Securities Administrator would frustrate the purpose the Minn. TIP Statute and similar judicial instruction regimes. On its face, the Minn. TIP Statute, like New York's Article 77, imposes no deadline by which a trustee or other party must request judicial guidance. Permitting a trustee or other interested party to petition a court for instruction only for a period of six years after the trust instrument is executed, as Semper appears to argue in its Motion (*see* Semper Br. at 6-8), would lead to bizarre and illogical results. For example, were the statute of limitations to be applied as Semper suggests, courts would be prohibited from providing judicial guidance to trustees in a large number of personal planning trusts where the trust is not funded (and therefore need not be administered by the trustee) until after the death of the trust's maker. But in fact, courts routinely grant Article 77 relief in actions commenced more than six years after the trust instrument was executed. *See, e.g., In re Scarborough Prop. Corp.*, 25 N.Y.2d 553, 307 N.Y.S.2d 641 (1969) (affirming approval of sale of trust property to a trustee of trusts set up more than a decade before the action); *Irving Trust Co. v. Walton*, 274 A.D. 119, 79 N.Y.S.2d 858 (1st Dep't 1948) (affirming order pursuant to Article 77 predecessor statute appointing referee for inter vivos trust established by a trust instrument executed in 1929); *In re Salkin*, 9 Misc. 2d at 709, 170 N.Y.S.2d at 194 (denying motion to stay trust instruction proceeding related to trust indenture executed in 1944). Foreclosing an interested party from invoking the Minn. TIP Statute, CPLR Article 77 or a similar statute simply because the trust instrument was

executed on a date that falls outside the statute of limitations period for breach of contract or similar claims would drastically and illogically limit the utility of the remedies they provide.

### B. The Securities Administrator, Like an Interpleader Plaintiff, Is Entitled to Seek Direction from The Court Because It Faces Competing Claims

At the time the Securities Administrator filed its Verified Petition commencing this action, it had heard from several Holders of Class I-A-2 and Class I-A-3 Notes regarding the loss allocation discrepancy between the Indenture and Prosupp.  *See* Johnson Decl. Ex. 9 at 63:10-64:7; 147:15-148:9; 347:16-349:9.   None of these Holders had initiated legal action, but the Securities Administrator recognized that, while allocation of Realized Losses to either Class I-A-2 Notes or to Class I-A-3 Notes had not yet occurred, Realized Losses were mounting such that the Securities Administrator would soon have to make such an allocation.   The Securities Administrator filed this action only after it became clear that resolution of the discrepancy was necessary but before allocation of Realized Losses to one of the affected Classes of Notes was actually required under the Indenture.

Although the Securities Administrator commenced its case properly in Minnesota state district court pursuant to the Minn. TIP Statute, the current posture of the case supports application of legal principles from the interpleader context.   Most importantly, two investors, Sceptre and Semper, have now appeared in this action, each taking a different position with respect to the judicial instruction requested in the Verified Position.   Indeed, each investor has now asserted affirmative and irreconcilable claims for relief.   *Compare* Semper Counterclaims and Cross-Claims ¶¶ 30-32, 44 *with* Sceptre Affirmative Claim to the *Res* ¶¶ 2-5.   The Securities Administrator thus faces adverse claims, the resolution of which will affect the cash flows to the affected Classes of Notes, a scenario that is remarkably similar to that presented in the typical interpleader action.   *See New York Life Ins. Co. v. Conn. Dev. Auth.*, 700 F.2d 91, 95 (2d Cir.

13

1983) (affirming interpleader judgment as it determined rights of parties to cash surrender value of insurance policies); *Fidelity Brokerage Servs., LLC v. Bank of China*, 192 F. Supp. 2d 173, 178 (S.D.N.Y. 2002) ("[I]interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit.") (citing *Washington Elec. Co-op, Inc. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993)).

The Supreme Court has observed that the federal interpleader statute, 28 U.S.C. § 1335, "is remedial and [is] to be liberally construed." *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 533 (1967); *see also Ashton v. Paul*, 918 F.2d 1065, 1069 (2d Cir. 1990); *A&E Television Networks, LLC v. Pivot Point Entertainment, LLC*, No. 10 Civ. 9422 (PGG), 2011 WL 182083, at *3 (S.D.N.Y. Jan. 18, 2011). Indeed, courts have also recognized that "the trend both with regard to statutory revision and judicial interpretation has been directed toward increasing the availability of interpleader and eliminating . . . technical restraints on the device." *6247 Atlas Corp. v. Marine Ins. Co., Ltd.*, 155 F.R.D. 454, 462 (S.D.N.Y. 1994) (internal quotations and citation omitted); *A&E Television Networks*, 2011 WL 182083, at *3 (same). By its Motion, Semper seeks to foreclose the Securities Administrator from obtaining judicial relief on precisely the type of technical defense that has been rejected as inconsistent with the remedial purpose and equitable nature of interpleader relief.

The result Semper seeks to achieve is foreclosed by the holdings of courts that have addressed similar statute of limitations defenses in the interpleader context. For example, in *Ford Motor Company-UAW, Retirement Plan v. Wheatley*, a retirement plan was faced with competing claims for survivor benefits from two women who each claimed to be the surviving spouse of a deceased former Ford employee. No. 1:09 CV 477, 2010 WL 2802758 (N.D. Ohio

June 2, 2010), *as adopted in* 2010 WL 2802754 (N.D. Ohio July 15, 2010).   One of the interpleader defendants sought to dismiss the action because the statute of limitations pursuant to the ERISA statute had passed.  *Id*. at *3.   The court held that the ERISA statute of limitations was "inapplicable" and could not "operate to bar the [plaintiff's] interpleader claim" because the action was brought to determine the proper beneficiary.  *Id*.  Similarly, in an interpleader action in which the IRS argued that the action was barred by a statute of limitations applicable to actions against the United States, the court denied the IRS's motion, noting that it "ignores the purpose of this litigation," because the interpleader plaintiff was not disputing the validity of the IRS levy but "simply seek[ing] for this Court to determine the priority of the competing claims." *In re Strawberry*, 464 B.R. 443, 448 (Bankr. N.D. Fla. 2012); *see also State Farm Life Ins. Co. v. Cai*, No. 09-CV-00396-LHK, 2011 WL 864938, at *2 (N.D. Cal. Mar. 11, 2011) (statute of limitations for wrongful death claims did not bar interpleader action brought by life insurance company to resolve competing claims to an insurance policy, even though decedent's estate asserted a claim that the probate code required the life insurance proceeds to pass to estate instead of beneficiary accused of feloniously killing the insured).

Indeed, in an analogous interpleader case the Second Circuit has rejected a statute of limitations defense similar to the one asserted by Semper here.  In *Prudential Ins. Co. of America v. Glasgow*, the Second Circuit affirmed a trial court's decision reforming the beneficiary designation in a life insurance certificate, despite an interpleader defendant's argument that the reformation was barred by the statute of limitations.  208 F.2d 908, 910 (2d Cir. 1953).   In *Prudential*, the alleged error was not discovered until nearly eleven years after it was made, when the insured died, multiple claimants made a claim for his insurance, and the insurance company commenced the interpleader action seeking the court's direction.  *Id*.  Despite the lapse

15

in time, the court permitted the indifferent stakeholder to maintain the interpleader action and ultimately provided direction as to the proper beneficiary. Whether or not reformation is ultimately determined to be appropriate here, the *Prudential* court's holding makes clear that the statute of limitations cannot foreclose the Securities Administrator from securing the judicial instruction it has requested here.

## CONCLUSION

For the foregoing reasons, the Securities Administrator respectfully requests that the Court deny Semper's Motion for Judgment on the Pleadings or for Summary Judgment in all respects, and grant such other and further relief as the Court may deem proper.

Dated:      New York, New York
            June 11, 2014

                                        ALSTON & BIRD LLP

                                        __s/Michael E. Johnson_____
                                        Michael E. Johnson
                                        Carolyn R. O'Leary
                                        90 Park Avenue
                                        New York, New York 10016-1387
                                        Tel. 212-210-9400

                                        *Attorneys for Petitioner Wells Fargo Bank, N.A.,*
                                        *solely in its capacity as Securities Administrator*