IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Trusteeship Created by American Home Mortgage Investment Trust 2005-2 relating to the issuance of Mortgage-Backed Notes pursuant to an Indenture dated as of October 1, 2007 | Case No. 1:14-cv-02494-AKH<br>ECF Case<br><br>**SEMPER CAPITAL MANAGEMENT, L.P.'S CONSOLIDATED REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS OR SUMMARY JUDGMENT** |

Michael A. Rollin
Maritza Dominguez Braswell
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado  80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133
mrollin@joneskeller.com
mbraswell@joneskeller.com

*Attorneys for Semper Capital Management, L.P*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT……………………………………………….…...1

ARGUMENT…………………………………………………………………… 3

I.  Wells Fargo's Verified Petition Should Be Dismissed Because Its Claim for Reformation is Barred by the Applicable Statue of Limitations……………….…………………………………………….…3

    A. Wells Fargo Improperly Conflates the Substantive Claim for Reformation with the Procedural Trust Instruction Vehicle…………………………………………………………….…4

    B.  Despite Wells Fargo's Attempt to Recast This Action as an Interpleader, Its Claim For Reformation is Time-Barred…………….…8

II.  Sceptre's Statute Of Limitations Arguments Likewise Fail Because It Cannot Piggy-Back On A Time-Barred (And Otherwise Legally Impermissible) Action By Wells Fargo And Because Any Reformation Claim Expired On June 21, 2011……………………………………….12

    A.  Sceptre's Claim to the *Res* Cannot Survive if Wells Fargo's Action is Time-Barred or Otherwise Legally Impermissible………....12

    B.  Sceptre's Claim to the *Res* is Independently Time-Barred....................13

        1.  *The No-Action Clause Has No Effect on the Timeliness of Sceptre's Claim and Sceptre's Tolling Argument Misapplies Second Circuit Precedent and Ignores Black-Letter New York Law Invalidating Its Claim*………………………….…13

        2.  *Sceptre's Use of Out-of-State Cases Could Misleadingly Lead the Court to a Result in Direct Contravention of Established New York Limitations Law* ………..………………16

CONCLUSION………………………………………………………………18

# TABLE OF AUTHORITIES

**Cases**

*BlackRock Fin. Mgmt. Inc. v. Segregated Account of AMBAC Assur. Corp.*,
 673 F.3d 169, 174 (2d Cir. 2012) ................................................................................. 6

*Campione v. Campione*,
 942 F. Supp. 2d 279, 284 (E.D.N.Y. 2013) ........................................................... 11, 15

*Cruden v. The Bank of New York*,
 957 F.2d 961 (2d Cir. 1992) ............................................................................. 14, 15, 16

*Fiore v. Fiore*,
 46 N.Y. 2d 971, 973 (1979) .................................................................................... 5

*Ford Motor Co.-UAW Ret. Plan v. Wheatle*,
 No. 1:09 CV 477, 2010 WL 2802758, *3 (E.D. Ohio Jun. 2, 2010) **........................**11, 12

*In re a Petition for Instructions to Construe Basic Resolution 876 of the Port Auth. of the City of St. Paul*,
 772 N.W.2d 488 (Minn. 2009) ................................................................................. 6

*In re Ambassador Group, Inc. Litig. v. Ambassador Group, Inc.*,
 738 F. Supp. 57, 65 (E.D.N.Y. 1990) ...................................................................... 9, 10

*In re Ciquera*,
 21 Misc. 3d 1106(A), 2008 NY Slip Op. 51988(U) (Sur. Ct. Nassau Cty. 2008) ..................... 4, 5

*In re Foley Trust*,
 671 N.W.2d 206 (Minn. Ct. App. 2003) .............................................................. 16, 17, 18

*In re Scarborough Prop. Corp.*,
 25 N.Y.2d 553 (1969) ........................................................................................ 7

*In re Strawberry*,
 464 B.R. 443, 446, 448 (Bankr. N.D. Fla. 2012) ................................................ 11, 17, 18

*In re Trusteeship of Trust Created Under Trust Agreement Dated Dec. 31, 1974*,
 674 N.W.2d 222, 232 (Minn. Ct. App. 2004) ................................................ 4, 5, 8, 12, 17

*Irving Trust Co. v. Walton*,
 274 A.D. 119 (1st Dept. 1948) ................................................................................ 6

*Kolodziej v. Gosciak*,
 No. 08-CV-251A, 2008 WL 2260601, at *4 (W.D.N.Y. May 30, 2008) ......................... 8

{JK00588059.1 }

*Matter of Lipin*,
　9 Misc.2d 708, 710 (Sup. Ct. N.Y. County 1957), *aff'd*,
　6 A.D.2d 1011 (1st Dept. 1958)..................................................................................4, 7, 12

*MetLife Inv. USA Ins. Co. v. Pratt*,
　442 Fed Appx. 589 (2011)......................................................................................................8

*MetLife Inv. USA Ins. Co. v. Zeidman*,
　734 F. Supp. 2d 304, 314 (E.D.N.Y. 2010) ..........................................................................8

*Porwick v. Fortis Benefits Ins. Co.*,
　No. 99 CV 10122(GBD), 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004) ...................11, 15

*Prudential Ins. Co. of Am. v. Glasgow*,
　208 F.2d 908 (2d Cir. 1953)...........................................................................................10, 11

*Pulver v. Dougherty*,
　58 A.D.3d 978, 979 (3d Dept. 2009)..............................................................................11, 15

*State Farm Life Ins. Co. v. Cai*,
　No. 09-CV-00396-LHK, 2011 WL 864938, *1-*2 (N.D. Cal. Mar. 11, 2011)..........................12

*Trans-Resources, Inc. v. Nausch Hogan and Murray*,
　298 A.D.2d 27, 30 (1st Dept. 2002) ...................................................................................16

*U.S. v. High Tech. Prod., Inc.*,
　497 F.3d 637, 641 (6th Cir. 2007) ......................................................................................9

*Wall v. Meilke*,
　94 N.W. 688, 690 (Minn. 1903) .........................................................................................16

**Statutes**

28 U.S.C. § 2401(a).....................................................................................................11, 18

28 U.S.C. Sec. 1332 ..............................................................................................................8

Minn. Stat. § 501B.16............................................................................................................5

**Rules**

C.P.L.R.................................................................................................................................11

F.R.C.P.  12(b)(6).................................................................................................................14

F.R.C.P. 12(c) ........................................................................................................................14

F.R.C.P. 56(c) ........................................................................................................................14

**Other Authorities**

66 Am. Jur. 2d *Reformation of Instruments* sec. 6 (1973) ........................................................7

7 Wright, Miller, & Kane, *Federal Practice and Procedure* Sec. 1714 (3d ed. 2001) .....................9

Semper Capital Management, L.P, as Investment Manager for Semper MIDAS Fund, L.P. ("SCM"), by and through its undersigned counsel, respectfully submits this Consolidated Reply In Support of Its Motion for Judgment on the Pleadings or Summary Judgment.

## PRELIMINARY STATEMENT

The sole issue before the Court in this motion is whether Wells Fargo's and Sceptre's reformation claim is time-barred.  The relevant facts are not in dispute:

- The Indenture is dated June 22, 2005.  Doc. 75, Doc. 81 (Fact 3).

- Section 3.38 of the Indenture sets forth a sequence in which Realized Losses are to be allocated among the Classes.  Doc. 75 (Fact 6).

- Under the loss allocation priority set out in Section 3.38 of the Indenture, the Class I-A-2 Notes will absorb Realized Losses before the Class I-A-3 Notes.  Doc. 75 (Fact 7).

- In November 2010, a Class I-A-2 Noteholder informed Wells Fargo that there was a discrepancy between the Indenture and the Prosupp regarding the loss allocation priority.  Doc. 75, Doc. 81 (Fact 8).

- In November 2010, the statute of limitations on a reformation claim had not yet expired.  Doc. 81 (Fact 10).

- Wells Fargo filed its Verified Petition on January 17, 2014.  Doc. 75, Doc. 81 (Fact 12).

Based on these undisputed facts alone, the Court should dismiss Wells Fargo's and Sceptre's claim for reformation.  New York adheres to a strict six-year statute of limitations for reformation claims running from the date of execution.  Eight-and-a-half years elapsed between execution and this action.  Reformation is therefore unavailable as a matter of law.

In an effort to avoid dismissal, Wells Fargo and Sceptre contort their cause of action and conflate substantive law with procedure.  Presented with the statute of limitations, Sceptre now

claims that "this action is not a suit for reformation."   Doc. 79 at 7.   This statement is irreconcilable with its and Wells Fargo's prior claim that this is an action for reformation:

- "By preserving to Wells Fargo all 'remedies' available under New York law, the Indenture preserved Wells Fargo's ability to seek reformation, which is the well-established remedy under New York law for correcting a scrivener's error." Doc. 28 at 15.

- "Section 10.12 of the Indenture expressly preserved the Securities Administrator's right to pursue all 'remedies' available under New York law, which remedies include contract reformation…." Doc. 30 at 12-13.

- "Sceptre respectfully requests that the Court enter judgment …reform[ing] Section 3.38 of the Indenture so that any Realized Losses are allocated to the I-A-3 Notes and then, reverse sequentially, to the I-A-2 Notes…." Doc. 47 at 13.

It is difficult to see how one could characterize this action as anything but seeking reformation since, absent reformation, the Indenture's loss allocation priority will stand. Undaunted, Sceptre and Wells Fargo reframe the issue as not so much about reformation but about trust instruction.   *See* Doc. 79 at 1.   But nothing about the procedural form of this action alters the underlying substantive law, and neither Minnesota nor New York courts allow the use of a trust instruction proceeding to circumvent the applicable statute of limitations.   Thus, the question is not whether Wells Fargo can file a TIP—clearly it can—but what outcomes are possible.   Reformation is not.

Finally, in a last ditch effort, Sceptre and Wells Fargo posit that if this action were an interpleader, the statute of limitations would not apply.   This is not the law but, in any event, this is not an interpleader.   Interpleader has specific rules and requirements with which Wells Fargo has not complied and, therefore, Wells Fargo and Sceptre should stop analogizing to interpleader.

Like pockets turned inside out in search of loose change, Wells Fargo's and Sceptre's briefs search for any way to avoid dismissal.  But they do not cite a single case that permits circumventing the statute of limitations by filing as a trust instruction proceeding or interpleader.  In fact, courts in both New York and Minnesota have expressly rejected such attempts.

If Wells Fargo is truly seeking Court guidance on how to allocate losses—a question that is already answered by the Indenture and acknowledged in the undisputed facts above—then dismissal will provide it more quickly and more definitively than any other method.  And if Sceptre truly has a claim that is has been harmed, it can, as it always should have, pursue monetary recovery from those parties who made the alleged mistake, sold them the Notes, and/or allowed the statute of limitations to expire—not try to take SCM's bona fide value in the Notes.  Indeed, SCM submits that a far more fitting trust instruction would be for the Court to direct Wells Fargo to pursue recovery from the actual wrongdoers rather than from SCM.

Thus, for the reasons set forth below, SCM respectfully requests that the Court find that reformation is unavailable as a matter of law and dismiss this action.

## ARGUMENT

**I.     WELLS FARGO'S VERIFIED PETITION SHOULD BE DISMISSED BECAUSE ITS CLAIM FOR REFORMATION IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

It is beyond dispute that the claim at issue in this litigation is a common law claim for reformation of the Indenture.  Wells Fargo and Sceptre shroud the fundamental nature of their claim in a trust instruction proceeding and musings of interpleader to resist application of the statute of limitations, but the form of this proceeding is irrelevant.  Any claim to reform the Indenture is time-barred.

A.    **Wells Fargo Improperly Conflates the Substantive Claim for Reformation with the Procedural Trust Instruction Vehicle**

The relief Wells Fargo has requested (be it as it may, "in the alternative") is an equitable claim for reformation under New York law.  Wells Fargo and Sceptre have admitted this much. Doc. 28 at 15 ("By preserving to Wells Fargo all 'remedies' available under New York law, the Indenture preserved Wells Fargo's ability to seek reformation, which is the well-established remedy under New York law for correcting a scrivener's error."); Doc. 30 at 12-13 ("Section 10.12 of the Indenture expressly preserved the Securities Administrator's right to pursue all 'remedies' available under New York law, which remedies include contract reformation…."). Having availed itself of New York law to bring its claim, Wells Fargo cannot avoid application of the New York statute of limitations.

Contrary to Wells Fargo's assertion that the purpose of trust instruction proceedings will be thwarted by applying the statute of limitations, Doc. 73 at 12, nothing about using a special proceeding alters "the inherent nature of the action."  *Matter of Lipin*, 9 Misc.2d 708, 710 (Sup. Ct. N.Y. County 1957), *aff'd*, 6 A.D.2d 1011 (1st Dept. 1958).  Indeed, controlling authority in both Minnesota and New York rejects Wells Fargo's theory and is dispositive of this action as neither state's law permits circumvention of the statute of limitations under the guise of trust instruction.  *See In re Trusteeship of Trust Created Under Trust Agreement Dated Dec. 31, 1974*, 674 N.W.2d 222, 232 (Minn. Ct. App. 2004) (hereafter, "*In re Dec. 31, 1974*"); *In re Ciquera*, 21 Misc. 3d 1106(A), 2008 NY Slip Op. 51988(U) (Sur. Ct. Nassau Cty. 2008).

Wells Fargo argues that the Minnesota trust instruction statute governs the statutory framework of this case, and relies heavily on the statute to assert that the Court may reform the Indenture.  However, Minnesota trust instruction courts adhere to applicable time bars.  *See In re Dec. 31, 1974*, 674 N.W. 2d at 232 (holding that a trust instruction proceeding could not be used

{JK00588059.1 }

to avoid the applicable time bar).  In *In re Dec. 31, 1974,* the Court of Appeals of Minnesota held that, "[a]lthough Minn. Stat. § 501B.16 authorizes respondent trustees to request a clarification of the trust language, that law does not authorize respondents to circumvent the standing and timeliness requirements of the applicable [law]."  *Id.*  Seeking to resist the time bar and other limitations on the available remedy, "[r]espondent trustees and respondent beneficiaries," (like Wells Fargo and Sceptre here) argued "that the trustees' action is not governed by either the Florida or the Minnesota Parentage Act because it does not seek to challenge the younger children's paternity as established by those statutes, but is merely seeking to clarify and enforce the terms of the subject trusts pursuant Minn. Stat. § 501B.16."  *Id.* at 228.  The court rejected "respondents' characterization of the trustees' action[,]" *id.*, and held that the remedy the trustees sought was "unavailable . . . because of their failure to comply with the standing and timeliness requirements of applicable . . . laws."  *Id.* at 225.  In short, *In re Dec. 31, 1974*, is on all fours and confirms that neither a trustee nor an interested party can circumvent applicable limitations periods under the guise of trust clarification or a trust instruction proceeding.

New York law is equally dispositive of Wells Fargo's arguments.  In New York, statutes of limitations apply in special proceedings.  *See In re Ciquera*, 21 Misc. 3d 1106(A) (dismissing claim for proceeds on sale of estate property on limitations grounds).  Moreover, New York law does not contemplate the potential reformation remedy under these circumstances at all because New York courts are not free to rewrite an unambiguous trust instrument or contract.  *Fiore v. Fiore*, 46 N.Y. 2d 971, 973 (1979) ("The question, however, is not whether the agreement is imperfect but whether it is ambiguous.  The courts may not rewrite a term of a contract by

'interpretation' when it is clear and unambiguous on its face.").[1]  Yet that is precisely what Wells Fargo attempts to do here.  It seeks to stretch the purpose of trust instruction proceedings to fit the reformation claim at hand.

However, even a cursory read of Wells Fargo's trust instruction cases reveals that trust instruction proceedings are not meant to be a conduit for affirmative claims, but instead are available to provide protection where a trustee has made a decision that involves an exercise of judgment, or where there is a genuine question of contract interpretation. Indeed, in every single trustee-initiated trust instruction proceeding that Wells Fargo cites, the petitioner sought: (1) approval of a course of conduct or decision that required the trustee's exercise of discretion; (2) a trust accounting; and/or (3) interpretation of a trust agreement that was not clear on its face.  *See BlackRock Fin. Mgmt. Inc. v. Segregated Account of AMBAC Assur. Corp.*, 673 F.3d 169, 174 (2d Cir. 2012) (where the trustee entered into a settlement agreement then petitioned the court for approval of that discretionary decision, the court noted that "[s]uch proceedings are used by trustees to obtain instruction as to whether a future course of conduct is proper, and by trustees (and beneficiaries) to obtain interpretations of the meaning of trust documents."); *Irving Trust Co. v. Walton*, 274 A.D. 119 (1st Dept. 1948) (where the trustee petitioned the court for settlement of its accounts and construction of an unclear provision in the governing trust agreement); *In re a Petition for Instructions to Construe Basic Resolution 876 of the Port Auth. of the City of St. Paul,* 772 N.W.2d 488 (Minn. 2009) (where the Port Authority sought approval of its decision and plan to liquidate bond repayment, and the court analyzed the Port Authority's power [under the governing document] to issue such plan); *In re Scarborough Prop. Corp.*, 25

---

[1] Sceptre admits that Wells Fargo has not asked this Court to interpret ambiguous terms, Sceptre Doc. 28 at 3, and Wells Fargo's, Dan Cohen, testified that ███████████████████████████████████████ Rollin Decl., Ex. M [Deposition of Daniel Cohen on behalf of Wells Fargo ("Cohen Dep.")] at 225:3-16; 227:16-228:4.

{JK00588059.1 }

N.Y.2d 553 (1969) (where trustees sought approval of the decision to sell trust property to a trustee); *Matter of Lipin,* 9 Misc. 2d 708 (where trustee sought an accounting).

Wells Fargo seeks none of those things here.  It makes no difference that Wells Fargo has styled this proceeding as one for instruction because the Verified Petition speaks for itself.  Wells Fargo is <u>not</u> seeking an accounting, it is <u>not</u> seeking interpretation of some ambiguous provision in the Indenture (Sceptre admits this much[2]) and it is <u>not</u> seeking approval of any proposed exercise of discretion.[3]  Instead, at the request and urging of Sceptre, Wells Fargo has lobbed a common law claim for reformation into this Court and by its conduct, has improperly opened the door to altering the governing trust document[4]—an outcome it itself previously determined was not possible.[5]

Thus, while the applicable trust instruction or special proceeding statutes are to be construed broadly, Wells Fargo has distorted and stretched their purpose here.  Trust instruction proceedings were never intended to serve as a vehicle for smuggling in an otherwise time-barred

---

[2]  Sceptre Doc. 28 at 3.  Because the Indenture is unambiguous, construction is not an available remedy, and the only available claim, if any, is reformation.  66 Am. Jur. 2d *Reformation of Instruments* sec. 6 (1973).  Though as set forth herein and in SCM's Answer, reformation also is not an available remedy.

[3]  In fact, the allocation of losses is never a matter of discretion as the priority is clearly and unambiguously set forth in the Indenture.  Mr. Cohen testified that ███████████████████████████ ████████████████  Cohen Dep. at 225:3-16; 227:16-228:4, Rollin Decl. Ex. M.

[4]  By Sceptre's own admission, reformation would be unavailable *but for* Wells Fargo's initiation of this proceeding:  Doc. 79 at 12 ("[O]nce Wells Fargo instituted the instant proceeding, Sceptre was able to appear as a party in interest and assert its rights to the disputed payments. . . .").

[5] ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████        Cohen Dep. at 225:3-16; 227:16-228:4, Rollin Decl. Ex. M.

common law claim.  *See In re Dec. 31,* 674 N.W. 2d at 225 (holding that a time-barred remedy is unavailable to a trustee in a trust instruction proceeding).[6]

The statute of limitations applies and Wells Fargo's petition must be dismissed as a matter of law.

**B.     Despite Wells Fargo's Attempt to Recast This Action as an Interpleader, Its Claim For Reformation is Time-Barred**

Wells Fargo's claim also does not survive judgment on the pleadings, or in the alternative, summary judgment, merely because Wells Fargo attempts to recast this action as an interpleader.

First, no amount of comparison converts this action into an interpleader.  A federal statutory interpleader ***requires*** five elements:

1) The interpleader action must be brought by a stakeholder who has custody or possession of the funds that constitute the fund to be distributed;

2) the action must concern the minimal jurisdictional amount of $500;

3) there must be two or more adverse claimants asserting a right to the fund;

4) the adverse claimants must be of diverse citizenship as defined in 28 U.S.C. Sec. 1332; and

5) the full amount disputed must be deposited in the [c]ourt registry.

*Kolodziej v. Gosciak*, No. 08-CV-251A, 2008 WL 2260601, at *4 (W.D.N.Y. May 30, 2008); *see also MetLife Inv. USA Ins. Co. v. Zeidman*, 734 F. Supp. 2d 304, 314 (E.D.N.Y. 2010), aff'd sub nom., *MetLife Inv. USA Ins. Co. v. Pratt*, 442 Fed Appx. 589 (2011).  Here, Wells Fargo has not pled the requisite elements for interpleader.

---

[6] The parties disagree about the purpose of trust instruction proceedings, and while that is an important issue, it is not a dispute that requires resolution on this motion.  Whether or not Wells Fargo has made proper use of a trust instruction proceeding has no bearing on the application of the statute of limitations, which courts have held applies.

Further, Wells Fargo has not satisfied important prerequisites for interpleader.  To ensure an interpleader claim is proper, interpleader action typically proceeds in two stages.  "During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, ***and whether any equitable concerns prevent the use of interpleader***."  *U.S. v. High Tech. Prod., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (emphasis added) (citing 7 Wright, Miller, & Kane, *Federal Practice and Procedure* Sec. 1714 (3d ed. 2001).  Then, "[d]uring the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *Id.*

Here, there are several equitable concerns that could prevent the use of interpleader, including, for example, the inequities associated with foisting reformation on SCM despite SCM having paid market prices for senior Notes and despite Wells Fargo's assurance that it would follow the Indenture.  To avail itself of interpleader, Wells Fargo would have to satisfy a threshold equitable inquiry.  Since Wells Fargo has not done that, interpleader law is inapplicable.

 Second, and to the extent the Court is inclined to treat this matter as an interpleader action (though it is procedurally and substantively not that), the nature of the action cannot alter applicable state law.  *See In re Ambassador Group, Inc. Litig. v. Ambassador Group, Inc.*, 738 F. Supp. 57, 65 (E.D.N.Y. 1990) (where parties argued that the nature of the action (interpleader) should affect the court's interpretation of the policy at issue, and the court held:  "***Congress has nowhere indicated that the interpleader statute was intended to alter state contract and insurance law***.  Thus interpleader considerations have not influenced today's decision."

{JK00588059.1 }

9

(emphasis added)).  *In re Ambassador* ends the inquiry as to interpleader, and *none* of Wells Fargo's interpleader cases stand for the proposition that a statute of limitations defense is extinguished by the mere filing of an interpleader action.

In fact, two of Wells Fargo's own cases demonstrate that statutes of limitations do indeed apply to underlying claims in interpleader actions.  In *Prudential Ins. Co. of Am. v. Glasgow*, 208 F.2d 908 (2d Cir. 1953), an insurer brought an interpleader action, deposited the insurance proceeds at issue into the registry of the court, and sought judicial instruction regarding two competing certificates that named different beneficiaries to the same policy.  Underlying the dispute was a claim for reformation of one of the certificates.  The court <u>did not</u> reject the statute of limitations defense as wholly inapplicable to interpleader actions.  *Id.* at 910.  Instead, it held "that neither laches nor the statute of limitations was a defense because the [claimant] had no knowledge of the terms of [the insurance certificate] until after her husband's death."  *Id.* (emphasis added).

The *Prudential* court's decision concerning laches and the statute of limitations demonstrates the viability of a statute of limitations defense, even in an interpleader action. Under the circumstances in *Prudential*, (where the claimant did not know of the purported mistake and was not in possession of the document), the statute of limitations did not bar the reformation claim.  But here, the statute of limitations bars reformation because ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████  *See* Cohen Dep. at 39:8-40:2, Rollin Decl. Ex. M.  Wells Fargo ██ ██████████████████████████████████, *see id.* at 40:3-22, Rollin Decl. Ex. M, and Wells Fargo ██████████████████████████████████████████████████ ████████████.  *See* Combined Rule 56.1 Statements Undisputed Material Facts 8-10.

But the Court does not need to reach the "discovery" analysis applied in *Prudential*. Application of that analysis (as was the case in *Prudential*) pre-dates enactment of the C.P.L.R., which unequivocally places a six-year limit on all claims based upon mistake, and courts (long after *Prudential* was decided) have routinely held that a claim for reformation expires six years after the purported mistake was made, not six years from the date of discovery. *Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122(GBD), 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004); *Campione v. Campione*, 942 F. Supp. 2d 279, 284 (E.D.N.Y. 2013); *Pulver v. Dougherty*, 58 A.D.3d 978, 979 (3d Dept. 2009).

Similarly, *In re Strawberry*, 464 B.R. 443, 448 (Bankr. N.D. Fla. 2012), on which both Wells Fargo and Sceptre rely, shows that the statute of limitations can apply in an interpleader action. In *Strawberry*, a dispute arose as to the distribution of Darryl Strawberry's deferred compensation from the Mets. *Id.* at 446. The Mets interpleaded the sum of money and the Internal Revenue Service moved to dismiss as part of an effort to retain its superior levy relative to other potential creditors. *Id.* Among other things, the IRS asserted a statute of limitations defense. *Id.* But the Florida bankruptcy court did not need to reach the statute of limitations defense because the parties had already agreed to the IRS's seniority. *Id.* at 448. Like in *Prudential*, there was no wholesale rejection of the statute of limitations just because it was an interpleader action. If the parties had not agreed to the IRS's seniority, the six-year statute of limitations for claims "against the United States," 28 U.S.C. § 2401(a), would have come in to play. *See In re Strawberry*, 464 B.R.443. Here, by contrast, Sceptre disputes SCM's seniority, rendering reliance on *In re Strawberry* an error.

The other interpleader cases Wells Fargo cites are similarly inapposite. In *Ford Motor Co.-UAW Ret. Plan v. Wheatley*, the defendant argued that the ERISA statute of limitations—

applicable to a *beneficiary's* breach of fiduciary claim against a plan fiduciary—barred the *plan fiduciary's* action.  No. 1:09 CV 477, 2010 WL 2802758, *3 (E.D. Ohio Jun. 2, 2010).  There, it was obvious (likely why the Court did not articulate any analysis) that the statute of limitations applicable to a *beneficiary's* claim could not apply to bar a *fiduciary's* claim.  Similarly, in *State Farm Life Ins. Co. v. Cai*, the defendant's statute of limitations defense was rejected—not because it was an interpleader action—but because the time-barred claim was not the claim at issue.  No. 09-CV-00396-LHK, 2011 WL 864938, *1-*2 (N.D. Cal. Mar. 11, 2011) (rejecting the defendant's statute of limitations defense because "[n]o claim of wrongful death, or any other personal injury, exists in the present action.").  *Id.* at *2.

Distinguishably here, the statute of limitations for claims based upon mistake applies because that is precisely the claim at issue—reformation based upon purported mistake.  The procedural mechanism by which the claim is before this Court does not alter the "the inherent nature of the action."  *See Matter of Lipin*, 9 Misc. 2d at 710; *see also In re Dec. 31, 1974*, 674 N.W.2d at 225 (rejecting trustees' attempt to circumvent time-bar).

Finally, and to the extent Wells Fargo truly seeks only instruction, guidance, or closure, a ruling that reformation is time-barred would give Wells Fargo exactly the closure it needs.  A finding that reformation is no longer permitted pursuant to the applicable New York statute of limitations would foreclose reversal of the loss allocation priority and cause Wells Fargo to proceed as it initially intended:  under the governing terms of the Indenture.

## II.     SCEPTRE'S STATUTE OF LIMITATIONS ARGUMENTS LIKEWISE FAIL BECAUSE IT CANNOT PIGGY-BACK ON A TIME-BARRED (AND OTHERWISE LEGALLY IMPERMISSIBLE) ACTION BY WELLS FARGO AND BECAUSE <u>ANY</u> REFORMATION CLAIM EXPIRED ON JUNE 21, 2011

### A.     Sceptre's Claim to the *Res* Cannot Survive if Wells Fargo's Action is Time-Barred or Otherwise Legally Impermissible

In an effort to avoid being time-barred, Sceptre argues that it could not have brought its Claim to the *Res* but for Wells Fargo's instituting this proceeding:  "[O]nce Wells Fargo instituted the instant proceeding, Sceptre was able to appear as a party in interest and assert its rights to the disputed payments…."  Doc. 79 at 12; *see also id.* ("[T]his proceeding provided Sceptre with its first opportunity to vindicate its right under the Indenture….").

SCM, as a Noteholder and Trust beneficiary, is deeply troubled by Wells Fargo's willingness to open the door for Sceptre so that Sceptre may seek individual gain at the expense of SCM. [7]  And all Noteholders should be troubled by the fact that Wells Fargo ███████████ ████████████████.  *See* Cohen Dep. at 183:7-23, Rollin Decl. Ex. M.  Setting that aside for the time being, the consequence of Sceptre's piggy-backing is that if Wells Fargo's claim is time-barred (or otherwise legally impermissible), then Sceptre's claim too must fail.

**B.      Sceptre's Claim to the *Res* is Independently Time-Barred**

> *1.      The No-Action Clause Has No Effect on the Timeliness of Sceptre's Claim and Sceptre's Tolling Argument Misapplies Second Circuit Precedent and Ignores Black-Letter New York Law Invalidating Its Claim*

Sceptre argues that its Affirmative Claim to the *Res* accrued only once the no-action clause no longer limited its ability to bring suit.  This argument is deeply flawed for several reasons.

---

[7]  Whether Wells Fargo has the right to bring this action is not at issue in this motion except to the extent the statute of limitations bars the action.  SCM does not concede that the Indenture gives Wells Fargo the right to initiate this action.  Indeed, Wells Fargo's powers and functions are limited by the Indenture.  *See, e.g.*, Indenture § 6.01(b) (providing that absent an Event of Default "the Securities Administrator shall undertakes to perform such duties and only such duties as are specifically set forth in this Indenture….").  And, the no-action clause speaks only to the Indenture Trustee, not the Securities Administrator.  Indenture § 5.06.  The Indenture Trustee is Deutsche Bank National Trust Company ("DBNTC").  Verified Petition at 1.

First, the very clause Sceptre relies on to purportedly toll the statute of limitations flatly prohibits Sceptre's prosecution of this case: "[N]o one or more Holders of Notes shall have any right in any manner whatever by virtue of, of by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders of Notes or to obtain or seek to obtain priority or preference over any other Holders of Notes or to enforce any right under this Indenture, except in the manner herein provided."  Indenture § 5.06. [8]

Second, Sceptre's application of the no-action clause is entirely situational, arguing that it may bring a claim while at the same time arguing that SCM cannot.  Doc. 55 at 5-7.  The Court should not tolerate Sceptre's situational application of the no-action clause only to suit its own interest.[9]

Third, and to the extent Sceptre attempts to cite legal authority for the proposition that its Affirmative Claim to the *Res* was tolled under the no-action clause, that argument is unavailing because it is premised on a misapplication of the principles enunciated by the Second Circuit in *Cruden v. The Bank of New York*, 957 F.2d 961 (2d Cir. 1992).

In *Cruden*, debenture holders sued the issuer's successors and indenture trustees for non-payment arising from an allegedly fraudulent scheme to siphon value from the obligor corporation, rendering it unable to meet its payment obligation to debenture holders.  *Id.* at 965.

---

[8]  Sceptre's effort to by-pass the no-action clause for individual gain stands in stark contrast to SCM's cross-claims and counterclaims, which seek only to be made whole for losses occasioned by the misconduct of Sceptre and/or abandoned assurances and protections of Wells Fargo.  SCM seeks no preference, priority, or individual benefit.

[9]  In contrast to Sceptre's *ipse dixit*, SCM provided a detailed argument and legal authority explain why its cross-claims are not restricted by the no-action clause.  Doc. 62 at 3-6; 9-10.  Thus, the Court could (and should) reasonably conclude that SCM's cross-claims have been adequately pleaded under F.R.C.P. 12(b)(6) while also concluding that Sceptre's Claim to the *Res* is time-barred on a F.R.C.P. 12(c) or F.R.C.P. 56(c) standard.  If the Court adopts Sceptre's argument concerning the inapplicability of the no-action clause to its own Claim to the *Res*, then the Court should also conclude that SCM's cross-claims must proceed on the less exacting motion to dismiss standard.

{JK00588059.1 }

As it pertains to the statute of limitations, the Second Circuit held that the debenture holders' claims against the trustees and the issuer's successors accrued only upon the date on which the holders were entitled to a remedy, *i.e.*, the date of non-payment.  *Id.* at 968, 975.  From this, Sceptre argues that the statute of limitations is likewise tolled because its claim accrued only upon Wells Fargo's initiation of this action.

To accept Sceptre's formulation of *Cruden,* the Court would have to overlook a major distinction between *Cruden,* and the case at hand.  The fact central to the Second Circuit's holding in *Cruden* was that the debenture holders did not have a remedy until the issuer failed to pay under the Indenture.  *Id.* at 968, 975.  Here, however, the reformation remedy, if any, was available immediately after closing, on June 22, 2005.  This is a matter of law in New York. *Porwick v. Fortis Benefits Ins. Co.*, No. 99 CV 10122(GBD), 2004 WL 2793186, at *4 (S.D.N.Y. Dec. 6, 2004); *Campione v. Campione*, 942 F. Supp. 2d 279, 284 (E.D.N.Y. 2013); *Pulver v. Dougherty*, 58 A.D.3d 978, 979 (3d Dept. 2009).

On June 23, 2011, Wells Fargo and whoever held what later became Sceptre's Class I-A-2 Notes, lost any reformation remedy due to the passage of time.[10] ███████████ ███████████████████████████████████████ *See Generally* Cohen Dep. at 149:15-165:15, Rollin Decl. Ex. M, ██████████████████████████ As an assignee, Sceptre took its "cause of action subject to all infirmities, equities and defenses that could have been asserted against the assignor at the time of the assignment."  *E.g.*, *Trans-*



[10] ██████████████████████████████████ Cohen Dep. at 421:11-16, Rollin Decl. Ex. M:, ████████████████ .

{JK00588059.1 }

15

*Resources, Inc. v. Nausch Hogan and Murray*, 298 A.D.2d 27, 30 (1st Dept. 2002).[11]  Therefore,

Sceptre acquired no reformation claim, and *Cruden* does not apply to Sceptre's Claim to the *Res*.

> 2.    *Sceptre's Use of Out-of-State Cases Could Misleadingly Lead the Court to a Result in Direct Contravention of Established New York Limitations Law*

Sceptre glosses over the absence of New York law that would support its claim that no

statute of limitations applies to this matter and instead offers inapposite out-of-state cases that

could lead the Court to an incorrect result.

Sceptre's first case is *In re Foley Trust*, 671 N.W.2d 206 (Minn. Ct. App. 2003).  Sceptre

cites *Foley* for the proposition that "Minnesota courts have routinely reformed the express terms

of trusts decades after their execution."  Doc. 79 at 8.  But the *Foley* analogy fails on every level.

*Foley* involved "an unfair result from an unauthorized transaction."  *In re Foley Trust*,

671 N.W. 2d. at 212.  In order to remedy the *ultra vires* distribution to certain beneficiaries, the

court exercised its equitable power to reform the trust instrument.  *Id*.  Here, the allocation of

Realized Losses to the Class I-A-2 Notes before the Class I-A-3 Notes would not be, as in *Foley*,

contrary to the express terms of the governing document, *id*. at 211-12, but, rather, in accord

with the express terms of the governing document, (Indenture § 3.38).  Foley is therefore

inapposite on its facts.

Moreover, for limitations purposes, the reformation in *Foley* was timely because

Minnesota has no statute of limitations for reformation on grounds of mistake.  *Wall v. Meilke*,

94 N.W. 688, 690 (Minn. 1903).  Accordingly, no limitations issue was presented in *Foley*, and

---

[11]  If, ignoring well-worn assignment law, Sceptre argues that its claim accrued anew upon its own acquisition, the result would be absurd, as parties could perpetuate the statute of limitation forever merely by transferring holdings within 6 years of each acquisition.

the fact that the reformation occurred "decades later," Doc. 79 at 8, is irrelevant to the analysis.[12] And, as discussed in Section I.A., *supra*, if a statute of limitations applied, a Minnesota trust instruction court would apply it. *In re Dec. 31, 1974*, 674 N.W.2d at 232.

Unlike *Foley*, this case is governed by New York law:

THIS INDENTURE SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK…AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

(Indenture § 10.12.)  *See also* Specimen Class I-A Note (placing Noteholders on notice that their rights and responsibilities are governed by the Indenture).  The parties agree that New York law governs this case.  *See* Doc. 28 at 15 ("By preserving to Wels Fargo all 'remedies' available under New York law, the Indenture preserved Wells Fargo's ability to seek reformation, which is the well-established remedy under New York law for correcting a scrivener's error."); Doc. 30 at 12-13 ("Section 10.12 of the Indenture expressly preserved the Securities Administrator's right to pursue all 'remedies' available under New York law….").

New York law unambiguously provides that a reformation claim is barred six years after execution of the governing document.  Doc. 66 at 6-8.  Were that not the case, Sceptre and Wells Fargo most certainly would have cited to applicable authority for that proposition.  They have not because there is none.  *See* Doc. 79 at 8 (Sceptre admitting that its argument "does not appear to have been addressed in any written decision" applying New York law).  Thus, Sceptre's reliance on Minnesota law and the *Foley* case is misplaced.

As discussed above in connection with Wells Fargo's conflation of substantive and procedural law, Sceptre also wrongly relies on *In re Strawberry*, 464 B.R. 443.  There, the IRS's

---

[12]  Even were timeliness an issue, the unauthorized distribution occurred in 2000, and the trustee promptly filed the trust instruction proceeding in 2002 in the course of administering the decedent's estate.  *See In re Foley Trust*, 672 N.W.2d at 208.

{JK00588059.1 }

statute of limitations defense was mooted by agreement of all parties that the IRS had a superior lien on Mr. Strawberry's deferred compensation.  The clear implication from the Court's analysis is that if the lien priority was in dispute, thereby making the interpleader action a claim "*against the United States*," the limitations period found in 28 U.S.C. § 2401(a) would have come in to play.  *See In re Strawberry*, 464 B.R. at 450.  Thus, like *Foley*, *Strawberry*, does not stand for the proposition for which Sceptre cites it.

More importantly, as discussed above, this is not an interpleader action.  Wells Fargo has neither filed an interpleader action nor satisfied any of the requirements for an interpleader action. Having chosen reformation as the horse to ride, Wells Fargo and Sceptre must also accept the statute of limitations that applies to reformation.  That statute of limitations expired three years ago ( ████████████████████████████████████  And while there are any number of reasons why the Court should not reform the loss allocation priority, including that SCM is a bona fide purchaser who would be severely prejudiced from reformation and that reformation is barred by the Indenture and the Trust Indenture Act, this case is easily disposed of on the even more simple ground that it is time-barred.  In their oppositions to SCM's Motion for Judgment on the Pleadings or for Summary Judgment, Wells Fargo and Sceptre offer no facts and no plausible authority to the contrary.  That Sceptre has been forced to rely on *Foley* and *Strawberry* shows just how far it has to stretch to avoid a straightforward application of the statute of limitations under New York law.

## CONCLUSION

The Indenture unambiguously allocates losses to the Class I-A-2 Notes before the Class I-A-3 Notes.  Both Sceptre and SCM purchased with knowledge of that fact.  In an effort to reverse that priority and appropriate for itself the higher value of the Class I-A-3 Notes, Sceptre

{JK00588059.1 }

requested and urged Wells Fargo to bring this action to change the Indenture.  Because any change to the loss allocation priority is impossible absent consent of the affected Noteholders, Wells Fargo and Sceptre are using the Indenture's Governing Law clause in an attempt to import New York's equitable remedy of reformation.  New York's statute of limitations ran, however, in June 2011—██████████████████████████████████.  The time-bar is not altered by the form of proceeding, whether a trust instruction (which Wells Fargo brought) or an interpleader (which it did not).

Further, Sceptre cannot maintain its Claim to the *Res* because it is dependent on Wells Fargo's ineffective claim, and because Sceptre took only the rights available to its assignor.  By the time Sceptre acquired its Notes, any reformation claim had long since expired.

Respectfully submitted, this 18th day of June, 2014

s/ Michael A. Rollin
Michael A. Rollin
Maritza Dominguez Braswell
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado  80202
Telephone: (303) 573-1600
Facsimile: (303) 573-8133

*Attorneys for Semper Capital Management, L.P.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2014, a true and correct copy of the foregoing Semper Capital Management, L.P.'s Consolidated Reply in Support of Its Motion for Judgment on the Pleadings or Summary Judgment was e-filed with the Court via the CM/ECF system and also served upon the following via CM/ECF and email:

Michael E. Johnson
Carolyn O'Leary
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
michael.johnson@alston.com
carolyn.oleary@alston.com

*Attorneys for Petitioner Wells Fargo Bank,*
*N.A., solely in its capacity as Securities*
*Administrator*

Jonathan E. Pickhardt
Blair Adams
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
jonpickhardt@quinnemanuel.com
blairadams@quinnemanuel.com

*Attorneys for Party-in-Interest Sceptre, LLC*

By: s/  Martha Beach _____
       Martha Beach